372 S.E.2d 920

Henry BENNETT, Jr., et al.,

v.

Ralph WARNER, et al., William
N. Haney, Sr., et al.,

v.

**COMMONWEALTH LAND TITLE
INSURANCE CO.**

No. 18023.

Supreme Court of Appeals of
West Virginia.

July 1, 1988.

Rehearing Denied Sept. 22, 1988.

Richard W. Cardot, Elkins, for William and Rose Haney.

Braun Hamstead, Charles Town, for Henry Bennett et al.

McGRAW, Justice:

This is an appeal by William N. and Rose Ann Haney, third-party plaintiffs below, from an order of the Circuit Court of Pendleton County which denied their motion for a new trial in their suit against the Appellee, Commonwealth Land Title Insurance Company (Commonwealth), a third-party defendant below. The third-party complaint alleged that Commonwealth's delay in obtaining a right-of-way for the Appellants was intentional infliction of emotional and physical suffering and distress, and the action was brought within the concept known as the "tort of outrage." The trial was bifurcated so as to first consider only the issue of liability. The jury verdict was for Commonwealth, and costs were assessed against the Appellants by the court.

I

FACTS

William N. and Rose Ann Haney were Pennsylvania residents who purchased a thirty-six acre tract of property in Pendleton County from Ralph and Nellie Warner on August 9, 1984, with the intention of relocating their residence to West Virginia. Rose Ann Haney said she suffered from severe allergic reactions to a multitude of environmental pollutants, and that the purpose of the relocation was to live in an area free from industrial pollutants.

The title search for the Appellants' property was done by an approved attorney for the Appellee, who also applied for and obtained title insurance for the property from that company. There was no note of defect in the right-of-way mentioned in the deed title report, and the title insurance policy included protection of the right-of-way to the insured property.

After the Appellants had purchased the property and had begun construction of their home, they learned of a possible problem with access to their property when a neighboring property owner (the Bennetts) refused to give them a written right-of-way along an existing access road to their property. The Bennetts denied the Appellants use of that access road in December 1984, and refused a utility right-of-way in April 1985. As a result of this right-of-way problem, the Appellants were delayed in obtaining construction financing. They suspended construction on their home, except for completion of a habitable basement, in which they were living by June 1985.

The Appellants were unsuccessful in obtaining a right-of-way or legal assistance from the attorney involved in the title search, application for title insurance, and purchase of their property. They sought legal assistance from another attorney, who noted the possible coverage by the title insurance of the right-of-way problem, and wrote a letter to the Appellee and their approved attorney in May 1985. The Appellee, through its attorney Braun A. Hamstead, began negotiations for a right-of-way across the Bennett property and notified the Appellants' attorney by letter dated May 31, 1985, that they would take care of the problem. Proposals for a right-of-way agreement were exchanged by the parties in the fall of 1985, but no agreement was reached.

On March 24, 1986, the Bennetts initiated this action by filing a suit seeking injunctive relief against the continuing trespass of the Appellants, the Warners, and one other landowner within the original Warner tract. The Appellants answered that suit, and filed a counterclaim against the Bennetts, a cross-claim against the Warners, and third-party complaint against the Appellee, Commonwealth. The Appellants sought recovery from the Appellee of any amount awarded the Bennetts against the Appellants. They demanded, in addition, judgment against the Appellee in the sum of $100,000 in compensatory damages and $100,000 in punitive and exemplary damages.[1]

In a hearing held on January 20, 1987, the court dismissed all matters in the suit except the third-party complaint by the Appellants against the Appellee. On that same day, the Appellants moved for a continuance, citing the inability of Appellant Rose Ann Haney to attend trial because of allergic reactions she had suffered from a recent trip to the courthouse. The Appellants also cited the lack of development of their plea for damages, the inadequacy of the two days allotted to conduct the trial, and the failure of the circuit clerk to obtain juror qualification forms from the potential jurors in the case. The court denied that motion and ordered the parties to appear for trial on January 21, 1987.

The Appellants immediately filed a petition for a writ of prohibition with this Court, seeking a stay of the scheduled trial on the same grounds cited in their motion for continuance below. That petition was refused by this Court on the day presented.

The jury was impaneled on January 20, 1987, with objection from counsel for the Appellant on the basis of the lack of juror

---

1. The Appellants were represented for the answer, counterclaim and cross-claim by Oscar M. Bean, retained by the Appellee to represent the Appellants in their right-of-way dispute after institution of the Bennett action. Attorney Richard Cardot was co-counsel on those actions, and also represented the Appellants in their third-party complaint against the Appellee.

After institution of the suit, Bean continued to negotiate with the Bennetts for the Appellants' right-of-way, and an agreement granting the Appellants the required access was signed on July 23, 1986. Consideration for that right-of-way agreement included payment of $4,000 (paid by the Appellee) and certain limitations on the future sale of the Appellants' property. Bean then withdrew as co-counsel for the Appellants by notice filed November 3, 1986.

qualification forms. The trial was commenced on January 22, 1987, and at that time the court *sua sponte* bifurcated the trial so as to try the issue of liability separately from the issue of damages, with the Appellants objecting to that bifurcation.

The jury returned a verdict on January 23, 1987, finding that the Appellee was not liable to the Appellants, and the court thereafter entered judgment for the Appellee and ordered the Appellants to pay the costs of the proceedings. The Appellants subsequently filed a motion for a new trial, which was denied. The Appellants appeal that denial.

## II

### JUROR QUALIFICATION FORMS

The Appellants assign error to the failure of the trial court to require the use of juror qualification forms in the jury selection process as required by West Virginia Code § 52–1–1 *et seq.* (Supp.1987).

Under article eight, section three of our Constitution, the Supreme Court of Appeals "shall have the power to promulgate rules ... for all of the courts of the State related to ... process, practice, and procedure, which shall have the force and effect of law." As we have previously noted, "[u]nder Article VIII, Section 8 [and Section 3] of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them." Syl.Pt. 1, *Stern Brothers, Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977); *see State v. Davis*, 178 W.Va. 87, 90, 357 S.E.2d 769, 772 (1987) (and cases cited therein); *see also State ex rel. Kenamond v. Warmuth*, 179 W.Va. 230, 232, 366 S.E.2d 738, 740 (1988).

This Court's rule regarding jury selection, W.Va.T.C.R. XII, does not, however, address the matter of juror qualification forms. Therefore, until this Court promulgates such a rule, the Legislature is not disabled from filling in the interstices, and we see no reason to invalidate the statutory requirements in question. The specific Code sections in question, W.Va.Code § 52–1–7(c), (d), and (e), were new provisions at the time of trial of this case, having taken effect on July 1, 1986. Upon inquiry by counsel for the Appellants on January 15, 1987, which was five days before the date set for striking of the jury, the Circuit Clerk of Pendleton County indicated that juror qualification forms had not been prepared for use in the county, and would, therefore, not be available for inspection in the Appellants' suit.

The Appellants argue that Code § 52–1–7 is mandatory in nature, and that failure to use the juror qualification forms deprives counsel of appropriate information needed to select an impartial jury. The Appellee argues that the purpose of that statute was satisfied by *voir dire*, in that the questions addressed to the panel produced the information that would have been available on the juror qualification forms. The Appellee also contends that the Appellants waived any error in the jury selection process by failing to object to the jury venire.

The trial court held, in denying the Appellants' motion for a new trial, that the Appellants had preserved their objection to the jury selection procedure,[2] but found that the statutory language requiring use of the forms was directory, rather than mandatory, in nature. The court noted that similar forms prepared in the past had not been utilized by attorneys in *voir dire*. The court further remarked that the county's circuit clerk was new in her position and unfamiliar with the new statute. The trial court held that the failure to use such forms was not grounds for granting a new trial.

2. We agree with the trial court that the Appellants' objection was preserved. The Appellants objected to the absence of the completed juror qualification forms prior to impaneling the jury. The appellants also unsuccessfully moved to stay the proceedings in the trial court and petitioned this Court for a Writ of Prohibition. Their challenge to the jury selection process is, therefore, in compliance with the challenge procedure found in West Virginia Code § 52–1–15.

The Appellants argue that the legislative choice of the term "shall," rather the term "may," in the 1986 jury selection statute dictates interpretation of the statute as mandatory in nature. Although the Appellants correctly state the general rule of statutory construction, this Court has held that jury selection statutes, notwithstanding the use of the term "shall," are generally directory in nature. *State v. Nuckols*, 152 W.Va. 736, 745–46, 166 S.E.2d 3, 10 (1968); *State v. Hankish*, 147 W.Va. 123, 126, 126 S.E.2d 42, 45 (1962). We have, however, found certain provisions of the jury selection statute to be mandatory in nature, such as the preparation of grand jury lists, Syl.Pt. 1, *Nuckols*, 152 W.Va. 736, 166 S.E.2d 3, and use of the proper procedure for selecting jury commissioners, Syl.Pt. 5, *State v. Pratt*, 161 W.Va. 530, 244 S.E.2d 227 (1978).

We comprehensively reviewed statutory interpretation of the word "shall" in *Canyon PSD v. Tasa Coal Company*, 156 W.Va. 606, 611–13, 195 S.E.2d 647, 651–52 (1973), and noted therein that the use of "shall" was not conclusive in determining whether a statute is mandatory or directory. We concluded in *Canyon* that "[i]n determining whether a statute is mandatory or directory the intention of the Legislature is controlling, and if that intention is to make compliance with the statute essential to the validity of the act directed to be done, the statute is mandatory." *Id.*, 156 W.Va. at 611, 195 S.E.2d at 651.

The language of the 1986 jury selection statute is not sufficiently free from ambiguity so that its meaning may be accepted and applied without resort to interpretation. Syl.Pt. 2, *Canyon*, 156 W.Va. 606, 195 S.E.2d 647. A review of the statutory language and the legislative history of the 1986 amendments, however, convinces us that the Legislature intended the mandatory use of juror qualification forms primarily as a tool for carrying out public policies identified by the Legislature. Those policies included the random selection of jurors from a cross section of the population and consideration for service of all eligible citizens, W.Va.Code § 52–1–1, as well as the prohibition of certain forms of discrimination in selecting juries, W.Va.Code § 52–1–2.

■ The 1986 jury selection statute substantially changed traditional procedures in this area, and legislative refinements were made in subsequent years.[3] An amendment of the article in 1987 expanded the use of the juror qualification forms in the jury selection process. That expanded use was one of the reasons cited for the Governor's veto of the legislation. H.B. 2380, 68th Legislature, 1st Session (1987) (vetoed March 31, 1987). Finally, the 1988 Legislature amended the article to make the use of juror qualification forms discretionary with each circuit judge, 1988 W.Va.Acts Ch. 79 (to be codified at W.Va.Code § 52–1–5a), which is a strong indication that the Legislature considered their use mandatory prior to that time. The cumulative impression left by the various actions after 1986 reflects recognition of the mandatory nature of the use of the juror qualification forms in the original statutory provisions.

■ We are, therefore, convinced that the completion of juror qualification forms was a mandatory, rather than directory, provision of the statute in effect at the time of the trial below.[4] The 1986 jury

---

**3.** We recognize that the actions of a subsequent legislature ordinarily are not helpful in determining the intent of a prior legislature. Syl. Pt. 4, *Detch v. Board of Education*, 145 W.Va. 722, 117 S.E.2d 138 (1960). In this case, however, the make-up of the legislative bodies was substantially the same, the amendments were temporally close to the 1986 statute, and the refinements of the 1987 and 1988 amendments occurred under circumstances which reveal the original legislative intent. *See Sutherland Stat. Const.* § 49.11 (4th ed. 1984).

**4.** In their briefs before this Court, both parties focus their discussion on the use of the juror qualification form to aid parties in *voir dire*, and the trial court discussed the use of such forms only in the context of providing information for *voir dire*. Such a discussion does not address the public policies that the use of juror qualification forms was primarily intended to promote.

The use of juror qualification forms, as mandated by the 1986 amendments to article 1, chapter 52, was not primarily intended to provide information to parties for *voir dire*. There-

selection statute, W.Va.Code § 52–1–1 *et seq.*, mandated the use of juror qualification forms, although subsequent amendments to that statute, 1988 W.Va.Acts Ch. 79, nullified that requirement as of July 1, 1988. It is the prerogative of the Legislature to change its mind and alter statutes, but this Court is obligated to uphold the legislative policy that was in effect at the time a cause of action arose.

Even if we had found that the statutory language was directory, substantial compliance with the article is required. W.Va. Code § 52–1–15. Since the trial court made no attempt to procure the completed forms from the prospective jurors, we must conclude that the trial court failed to comply substantially with article 1, chapter 52.[5]

■ We note that the 1986 statute established a new statutory procedure for challenge of a jury selection process. W.Va. Code § 52–2–15. The Legislature intended that, in the absence of fraud, that section be the exclusive means for a party to challenge the conformity of the jury selection process to the provisions of article 1, chapter 52. W.Va.Code § 52–1–15(c). Prior to passage of that statutory challenge process, we had generally held that parties challenging the jury selection process on the grounds of lack of substantial compliance with directory provisions of the statute had to show that the challenging party was prejudiced by that lack of compliance. *State v. Pancake*, 170 W.Va. 690, 697, 296 S.E.2d 37, 44 (1982); Syl.Pt. 3, *Hankish*, 147 W.Va. 123, 126 S.E.2d 42. We hold that the current statutory procedure for challenging the jury selection process requires only a finding of a substantial failure to comply with article 1, chapter 52, of the Code to support such a challenge with no showing of prejudice required.[6]

III

## BIFURCATION OF LIABILITY ISSUE FROM DAMAGES ISSUE

Apparently without any prior discussion with or notice to the parties, the trial court, *sua sponte*, bifurcated the issue of liability from the issue of damages on the morning that the trial commenced. The bifurcation was announced by the trial court just before the Appellants' counsel made his opening statement. The Appellants' best argument is that the bifurcation created significant procedural problems which weakened the presentation of their case. Counsel's opening statement reflected confusion on his part as a result to the bifurcation. Witnesses had to be called in a different order than that anticipated before the bifurcation, which was part of the cause of one important witness' inability to appear. The Appellants also contend that the bifurcation created tactical problems in presentation of their case because it eliminated any opportunity for the jury to hear evidence on how their harm was compounded by what the Appellants contend was an intentional and outrageous failure by the Appellee to settle the right of way problems as promised.

■ This Court has not previously addressed directly the propriety of bifurcating the liability and damages issues at trial. West Virginia Rule of Civil Procedure 42(c) provides, in part, that a trial court may grant a separate trial on any issue when such separate trial furthers convenience, avoids prejudice, or is conducive to expedition and judicial economy. Olson, *Modern Civil Practice in West Virginia*, § 7–11 (1984). In interpreting this rule, we have

---

5. Because the trial court made no effort to require the use of such forms, it is not necessary to determine what minor variance might be allowed in the completion of prospective juror forms and still adequately satisfy the statute.

6. We also note that the 1988 amendments did not insert in Code § 52–1–15 any requirement for prejudice to the protesting party to support a challenge to the jury selection process.

---

fore, the existence of alternative sources for such information is not sufficient grounds for failure to use such forms in the jury selection process. The 1986 statute required the use of such forms to provide a record of the identity and characteristics of persons summoned for jury duty so that this Court and others interested in a fair jury system could ensure that trial courts carried out the public policies of broad-based random selection and nondiscrimination underlying that statute.

held that granting separate trials lies within the sound discretion of the court, *Anderson v. McDonald,* 170 W.Va. 56, 62, 289 S.E.2d 729, 735 (1982), and we will not interfere with a bifurcation decision in the absence of an abuse of that discretion, *See Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 456–57 (1970). Nevertheless, the trial court's authority is not unlimited and Rule 42(c) "... must be considered ... in light of the general policy of our joinder rules, which are designed to promote consolidation of issues and parties in a single trial to save expense and encourage judicial economy." Syl.Pt. 2, *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981).

Our sister jurisdictions generally maintain a similar policy of allowing trial court discretion, but requiring that such discretion be exercised in a manner that best promotes judicial economy while avoiding prejudice. *Scott v. Stacey's Moving Ltd.,* 95 Mich.App. 191, 290 N.W.2d 121 (1980); *Schwartz v. Binder,* 91 A.D.2d 660, 457 N.Y.S.2d 109; (N.Y.App.Div.1982); *Finkel v. Finkel,* 120 Misc.2d 936, 466 N.Y.S.2d 906 (N.Y.Sup.Ct.1983); *See also Carlson v. Cain,* 204 Mont. 311, 700 P.2d 607 (1985).[7]

The federal appellate courts, in interpreting the similar federal rule on bifurcation,[8] "have emphasized that separate trials should not be ordered unless such a disposition is clearly necessary [since] a single trial generally tends to lessen delay, expense and inconvenience to all concerned." 5 Moore's Federal Practice § 42.03 (2d ed. 1987). In *Frasier v. 20th Century Fox Film Corp.,* 119 F.Supp. 495, 497 (D.Neb. 1954), the court held that separation of issues:

> should be resorted to only in the exercise of informed discretion and in a case and a juncture which moved the court to

conclude that such action will really further convenience or avoid prejudice....

> [a] paramount consideration at all times in the administration of justice is a fair and impartial trial to all litigants. Considerations of economy of time, money and convenience of witnesses must yield thereto.

*Id.* quoting *Moss v. Associated Transport, Inc.,* 344 F.2d 23, 26 (6th Cir.1965) and *Baker v. Waterman S.S. Corp.,* 11 F.R.D. 440, 441 (S.D.N.Y.1951).

■ We agree that a court must exercise informed discretion before bifurcating issues at trial. We hold that parties moving for separate trials of issues pursuant to West Virginia Rule of Civil Procedure 42(c), or the court if acting *sua sponte,* must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants.

■ It is not apparent that the trial judge in this case adequately considered the goal of judicial economy, or the danger of possible prejudice to the Appellants. There was no discovery or preparation time saved by the bifurcation, since apparently neither party had any advance notice of the trial court's intention to bifurcate. Further, the additional trial that would have been required if the Appellants had prevailed on the issue of liability would have necessarily involved extensive overlap of witnesses and testimony. From the record before us, it is apparent that the surprise bifurcation of the issues of liability and damages was not based on the exercise of informed discretion and may well have denied the Appellants a fair and impartial trial.

---

**7.** In examining Virginia case law on the bifurcation of liability and damages issues when several parties are involved, the Fourth Circuit federal court concluded that, "[a]lthough separate trials have their uses, it would appear that separating the issues of liability and damages in this kind of fact situation can only produce confusion and prevents the jury from any serious consideration of the respective roles of the par-

ties." *C.W. Regan, Inc. v. Parsons, Brinckerhoff, Quade and Douglas,* 411 F.2d 1379, 1388 (4th Cir.1969). While the fact situation in this case is not identical to that in *Regan,* we agree with the sentiment expressed therein.

**8.** Fed.R.Civ.P. 42(b).

We, therefore, hold that the trial court abused its discretion in its *sua sponte* bifurcation of the liability and damages issues, and further note that orders for the bifurcation of issues should hereafter be supported with sufficient reasons to indicate the exercise of informed discretion by the trial court.

## IV

### APPELLEE'S COUNSEL AS A WITNESS

Braun A. Hamstead, a counsel for the Appellee, had been involved in unsuccessful negotiations for a right-of-way agreement for the Appellants during the period prior to institution of this action. After the Bennetts instituted this suit and the Appellants filed a third-party claim against the Appellee, Oscar M. Bean replaced Hampstead as counsel for the Appellants on the right-of-way negotiations. Bean was successful in negotiating an agreement, which was signed on July 23, 1986.

There are three distinct issues in this assignment of error, only one of which we need address. We find the court below erred in issuing a broad protective order prohibiting the Appellants from deposing Hamstead.[9]

Hamstead filed a motion for a protective order, citing no grounds more explicit than his general need for protection from "the annoyance, oppression, and harassment of the above said deposition." He also noted that a proffer made by the Appellants' counsel to the trial court represented that the information sought from Hamstead could also be supplied by in-house counsel for the Appellee, Nathanial Yingling, who was also to be deposed. Counsel for the Appellants, in reply to that motion, argued that Hamstead had not established any need for protection, and contended that Hamstead's deposition was needed in addition to Yingling's in order to establish whether the Appellee acted in bad faith in

attempting to secure the Appellants' right-of-way.

The trial court issued a protective order on October 3, 1986, which found the deposition of Hamstead to be "inappropriate as a means of discovery." While stating that the trial court "cannot completely rule out the possibility of relevant evidence from Attorney Hamstead," the order prohibited deposition on the grounds that it would be "oppressive" for the Appellee to have its trial counsel deposed. The court also indicated that "there would be no way to protect a breach of attorney-client privilege at a deposition outside the presence of the court."

Motions for protective orders are made pursuant to West Virginia Rule of Civil Procedure 26(c). Olson notes that "[the] provisions of West Virginia Rule 26(c) provide a general authorization to the trial court to assure that the conduct of discovery does not result in annoyance, harassment, embarrassment, or in undue burden or expense." Olson, *supra*, Part III, at § 6.3C. The provisions of that rule include eight possible forms of a protective order, of varying degrees of restrictiveness.

In *State ex rel. McGraw v. West Virginia Judicial Review Board*, 164 W.Va. 363, 264 S.E.2d 168 (1980), we examined the use of a broad protective order similar to the one issued in the instant case and found that, "[a] protective order may be given, but it must set forth the areas that are open to legitimate inquiry and the areas that are to be protected from inquiry." *Id.*, 164 W.Va. at 367, 264 S.E.2d at 171. In that decision, we held improper a broad protective order, ruling that each area of inquiry in a proposed deposition should be scrutinized as contemplated in Rule 26(c), and "a narrowly drawn protective order, if appropriate, entered." *Id.*

In this case, the protective order stated that "the Court cannot completely rule out the possibility of relevant evidence from Attorney Hamstead based on what is

---

9. The other issues are the trial court's refusal to require Hamstead's withdrawal as counsel for the Appellee and the refusal of the court to allow the Appellants to call Hamstead as a witness.

now before it ..." Issuance of a broad protective order, based upon the assertion of a blanket privilege against discovery, without scrutiny of each proposed area of inquiry and without giving full consideration to a more narrowly drawn order constitutes abuse of discretion under West Virginia Rule of Civil Procedure 26(c). The protective order was plain error in this case because the order ignored the fact finding function of the proposed deposition as well as its importance in the discovery process in this matter.[10]

## V

### INABILITY OF APPELLANT ROSE ANN HANEY TO ATTEND AND PARTICIPATE IN THE TRIAL

The Appellants assign error to the refusal of the trial court to grant a continuance they requested on January 20, 1987, citing the inability of Appellant Rose Ann Haney to attend the scheduled trial because of illness. In support of their motion for a continuance, the Appellants submitted a letter from Dr. Henry Taylor, dated January 18, 1987. In that letter, Dr. Taylor expressed the opinion that Appellant Rose Ann Haney was "not medically stable to participate in court proceedings at the present time."

Appellant Rose Ann Haney experienced a serious allergic reaction during a January 15, 1987, attempted deposition at the Pendleton County courthouse. A room in the courthouse had recently been painted, and the Appellant had an allergic reaction to the fumes still in the air.[11] Her deposition was later taken at her home.

Dr. Taylor indicated that it was "likely she will experience similar allergic reactions during the jury trial," and that he had discussed with the Appellants the possibility of creating some sort of enclosure within the courtroom with sufficient flow of purified air that would isolate that Appellant from the courtroom environment. The letter further stated that access to an air purifier stored in the Appellants' basement, or purchase of a new air purifier, would be necessary. The letter concluded by indicating that if it were not possible to create a purified enclosure, the Appellant would have to provide testimony by closed circuit television or on videotape to prevent allergic reactions.

The trial court reviewed the letter from Dr. Taylor, but noted that no testimony was offered to the court in regard to the paint odor problem in the courthouse. The court also noted that the Appellee had willingly participated in a video evidentiary deposition of the Appellant prior to trial. The trial court found that the Appellant's medical condition was long-standing and existed long before she moved to West Virginia and well before the suit was filed. The court further found that the condition did not appear to be one that would be resolved in the near future.[12] The trial court denied the motion for a continuance, and ordered the trial to proceed on January 22, 1987.

■ Because of the existence of previously discussed errors sufficient to reverse the judgment of the trial court in this matter, we will not rule on whether the trial court was in error by refusing the motion for a continuance by the appellants. It is, however, beyond argument that the courts

---

**10.** As a result of the overly-broad protective order, it was impossible for the trial court to determine what, if any, relevant evidence Hamstead could offer, and in what form such relevant evidence might be introduced. It is similarly impossible to determine whether Hamstead's role as a potential witness would have been sufficient to disqualify him from continuing as counsel for the Appellee. We cannot, therefore, reach the issues of whether Hamstead should have been called as a witness, or whether he should have been disqualified as counsel for the Appellee.

**11.** The Appellant had also experienced a previous allergic reaction in the courthouse on November 19, 1986, following exposure to fumes from perfume or a leather jacket worn by an observer.

**12.** In a hearing on post trial motions, the trial court noted that "there was no way that counsel could assure this court that any time, in any reasonably near period in the future, that she [Appellant Rose Ann Haney] would be able to appear in this Court."

of this state are open to all and that parties in litigation should have access to their legal proceedings, W.Va. Const., art. III, § 17, and such access to court proceedings is also required as a part of due process, W.Va. Const., art. III, § 10.[13]

## VI

### CONCLUSION

The Appellants have also assigned error to a number of other procedural decisions made by the trial court, and have generally taken exception to the manner in which the trial was conducted. Because we have found sufficient error to reverse the judg-

ment of the trial court and order a new trial, we will not rule on those procedural and conduct objections.

For the reasons stated, the verdict below is reversed and the case is remanded to the Circuit Court of Pendleton County for a new trial.

### REVERSED AND REMANDED.

---

**13.** We believe that the Appellants should have supported their motion for a continuance with more than an unsworn letter from the Appellant's local physician. The trial court, however, could have, *sua sponte*, required the development of evidence regarding the Appellant's medical condition and the actual provisions that would be necessary to allow her to attend the trial. Deprivation of a party's right to attend trial should only be done after full examination of the party's reasons for not being able to attend, and after exhaustion of any reasonable accommodations.