479 S.E.2d 628

**Phyllis BARLOW, Plaintiff Below, Appellant**

**v.**

**HESTER INDUSTRIES, INC., Kenneth Davidson, Nicholas J. Gainer, and Philip Stump, Defendants Below, Appellees.**

No. 23305.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 25, 1996.

Decided Nov. 15, 1996.

Harley O. Staggers, Jr., Staggers & Staggers, Keyser, for Appellant.

Oscar M. Bean, Bean & Bean, Moorefield, for Appellees Hester Industries, Inc., Nicholas J. Gainer and Philip Stump.

Mark E. Baker, Crowell & Moring, Washington, DC, for Appellees Hester Industries, Inc., Nicholas J. Gainer and Philip Stump.

J. David Judy, III, Judy & Judy, Moorefield, for Appellee Kenneth Davidson.

CLECKLEY, Justice:

The plaintiff below and appellant herein, Phyllis Barlow, appeals from a final order entered September 13, 1995, by the Circuit Court of Hardy County, which denied her motion for a new trial following an adverse jury verdict. On May 19, 1995, a Hardy County jury determined that the defendant employer, Hester Industries, Inc., did not discriminate against Barlow on the basis of age or sex and did not discharge her in retaliation for engaging in activities protected by the West Virginia Human Rights Act. The jury further found that although Barlow and Hester had entered a Confidentiality Agreement, Ms. Barlow had not breached this contract.

On appeal[1] to this Court, Ms. Barlow asserts that the trial court erred by: (1) refusing to bifurcate Barlow's employment discrimination claims and Hester's breach of contract counterclaim; (2) excluding evidence concerning Hester's allegedly discriminatory motives; (3) admitting evidence of Barlow's alleged misconduct that Hester discovered after her termination; (4) instructing the jury as to the definition of an "at will" employee; (5) instructing the jury that Barlow must prove, by a preponderance of the evidence, that "but for" her protected class she would not have been terminated; (6) in-

[1]. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996, and continuing until further order of this Court.

structing the jury that it must consider any reason Hester provided regarding its decision to terminate Barlow regardless of whether this reason was a good reason or actually motivated Hester to fire Barlow; and (7) instructing the jury that Barlow must prove, by a preponderance of the evidence, that Hester's stated reason was a pretext for discrimination. Upon a review of the record, we affirm the decision of the circuit court.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Phyllis Barlow began working as a trimmer for Hester Industries, Inc., a chicken processing plant in Moorefield, West Virginia, on May 20, 1993. Upon the commencement of her employment, Hester gave Ms. Barlow an employee handbook, which described its progressive disciplinary system. The handbook provided that employees charged with disciplinary matters would first receive a verbal warning. Successive incidents would be addressed by a written warning, while future occurrences would result in suspension and, ultimately, termination. It appears that no disciplinary actions were noted in Ms. Barlow's personnel file.

In March, 1994, several younger, female employees [2] approached Barlow and complained about the working conditions and compensation of Hester's female employees. Ms. Barlow, acting as spokesperson for this group, addressed her supervisor, Kenneth Davidson, about these concerns during the monthly employees' meeting in March, 1994. She also attempted, during the April, 1994, employees' meeting, to suggest a manner in which Hester could improve the working conditions and compensation of its female employees while receiving a benefit from this procedure.[3] However, Ms. Barlow claims that she was prevented from speaking by a male employee who interrupted her. Allegedly, Philip Stump, Davidson's supervisor, met with Ms. Barlow after this meeting and told her that she "spoke up too much at employees' meetings." Hester then changed Barlow to another line, but Ms. Barlow asserts that she was not trained for her new position.

Shortly thereafter, on May 5, 1994, Barlow was driving home from work when she witnessed the death of her close friend, Krista Smith, a fellow employee who was also driving home from work, when a drunk driver struck Ms. Smith's automobile. The next morning, while she was at home, Ms. Barlow spoke with a coworker about Ms. Smith's death. Barlow said she believed that her supervisor, Kenneth Davidson, was responsible for Ms. Smith's death. Previously, Davidson had moved Ms. Smith's husband, also a Hester employee, to a different work shift. As a result of this schedule change, Ms. Smith, and not her husband, had been driving when the accident occurred. Barlow felt that had Ms. Smith's husband been driving, he could have avoided the accident. During this telephone conversation, Hester alleges that Ms. Barlow also stated that she regretted that Davidson, himself, had not been involved in the accident because "he was a drunk who had nothing to offer the world."[4]

As Hester's employees learned of these remarks, Hester claims that they became upset and severely disrupted production. Hester contends that several employees reported Barlow's remarks to Davidson and informed him of other instances of misconduct by Barlow. Specifically, these employees alleged that Barlow was (1) intentionally sabotaging production by mishandling chicken; (2) instructing other employees to slow production without authorization; (3) disrupting the work place by yelling, singing, and dancing while working on the production

---

2. Ms. Barlow is approximately forty years of age.

3. Ms. Barlow, and the female employees for whom she spoke, apparently believed that the female employees in the sizing department where they worked had a higher production rate than did the male employees who worked in this department. Consequently, Barlow proposed a system whereby employees who produced more than their required output would receive premium pay in addition to their regular wages.

4. Ms. Barlow claims that Mr. Davidson had been convicted of driving under the influence of alcohol, and that his driver's license had been revoked as a result of this offense.

line; (4) grabbing male employees on the buttocks; and (5) engaging in crude conduct of a sexual nature.[5]

Davidson then met with his supervisor, Philip Stump, and Hester's Vice President of Human Resources, Nicholas Gainer, with regard to Ms. Barlow's statements and alleged misconduct. Following these meetings, it appears that Gainer conducted an investigation to corroborate the allegations. Hester states that upon verification of Barlow's disruptive conduct, Gainer and Stump met with Ms. Barlow, on May 9, 1994, and suspended her pending further investigation of her alleged wrongdoing. It seems that Gainer then met with Hester's President and Vice–President of Operations with regard to Ms. Barlow's behavior. Finally, Hester submits that fol-lowing a more thorough investigation, and based upon the severity and pervasiveness of Barlow's misconduct, Hester terminated Barlow on May 16, 1994.[6]

On July 13, 1994, Ms. Barlow filed a civil action in the Circuit Court of Hardy County against the defendants below, Hester Industries, Inc.; Kenneth Davidson; Philip Stump; and Nicholas Gainer. Barlow alleged that the defendants had discriminated against her on the basis of sex and age [7] and retaliated against her because she had engaged in activities protected by the West Virginia Human Rights Act.[8] The defendants conducted discovery in this matter and learned that Barlow had reported erroneous information on her application for employment with Hester.[9] Hester also learned that Barlow had

**5.** At the jury trial in this matter, Ms. Barlow admitted having engaged in these various acts of alleged misconduct.

**6.** Barlow's termination letter from Hester provided the following reasons for her discharge: "1. Gross misconduct in disrupting the work atmosphere in the department. [and] 2. Deliberate actions that led to inefficient production." Hester maintains that Barlow's discharge was consistent with its personnel policy which provides for immediate discharge, without a prior written warning, of employees who commit serious misconduct.

**7.** Ms. Barlow contends that Hester did not discharge other employees, both males and younger females, who engaged in misconduct substantially similar to the infractions that Hester alleges she committed.

**8.** The West Virginia Human Rights Act defines "unlawful discriminatory practice," in part, as:
"It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the state of West Virginia or its agencies or political subdivisions:
\* \* \* \* \* †
"(3) For any labor organization because of ... sex [or] age ... of any individual ... to discriminate against such individual with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment;
\* \* \* \* \* \*
"(7) For any person, employer, [or] labor organization ... to:
\* \* \* \* \* \*
"(C) Engage in any form of reprisal or otherwise discriminate against any person be-cause he [or she] has opposed any practices or acts forbidden under this article[.]"
W. Va.Code, 5–11–9, in part, (1992). Ms. Barlow asserts that Hester discharged her in retaliation for her efforts to obtain better working conditions and increased compensation for the female employees in her department.

**9.** Apparently, Barlow had reported that she had a high school education when, in fact, she had completed only the tenth grade and had not graduated from high school. Ms. Barlow also inaccurately detailed her employment history by omitting reference to several previous jobs. Hester's discipline policy provides for the immediate discharge of any employee for "[f]alsification of employment application or providing misleading statements." The employment application in question similarly sanctions dismissal for supplying false information. The following warning appears on the employment application immediately above the applicant's signature line: "THE FACTS SET FORTH IN MY APPLICATION FOR EMPLOYMENT ARE TRUE AND COMPLETE. I UNDERSTAND THAT IF I AM EMPLOYED, ANY FALSE STATEMENTS ON THIS APPLICATION MAY RESULT IN MY IMMEDIATE DISMISSAL[.]" (Emphasis in original).

violated its Confidentiality Agreement.[10] It seems that several younger, female employees had asked Barlow to assist them in calculating the amount of meat each worker processed in one hour.[11] In computing these values, Barlow requested her son's help.[12] Hester claims that Ms. Barlow's disclosure of these values to her son, and subsequently to her attorney with regard to this case, violated its Confidentiality Agreement. Hester's disciplinary policy provides for the immediate termination of any employee for "[d]ivulging company trade secrets or proprietary information."

In response to learning of Ms. Barlow's disclosure of proprietary information, defendant Hester moved the trial court for leave to file a counterclaim against Barlow alleging breach of contract. The record indicates that Hester did not discipline the employees who provided the numerical information to Barlow. The trial court, by order signed January 3, 1995, granted Hester's motion, and "defer[red] ruling on the issue of whether the hearing of the counterclaim should be bifurcated from the remainder of the case." [13] On January 25, 1995, the trial court held a pretrial conference in this matter, during which it deferred ruling on Barlow's motion in limine requesting exclusion of "all evidence

discovered by Defendants after Ms. Barlow's termination." [14] By contrast, the trial court granted Hester's motion in limine to exclude all evidence of (1) the individual defendants' sexual and romantic relationships, including any relationships involving Hester employees, and (2) the individual defendants' mental health and drinking habits, including evidence that defendant Davidson had been convicted of driving under the influence of alcohol.[15] The court also deferred ruling on the defendants' motion for summary judgment.

Jury trial in this matter commenced on May 17, 1995. The court granted, in part, defendant Hester's motion for summary judgment and limited Barlow's recovery to those damages arising before October 13, 1994, the date on which Hester discovered her alleged wrongdoing regarding her employment application and her disclosure of confidential business information.[16] On May 19, 1995, the jury returned a verdict against Ms. Barlow, finding that the defendants had neither discriminated against her on the basis of age or sex nor retaliated against her in violation of the West Virginia Human Rights Act. The jury also returned a verdict against defendant Hester, determining that, while Barlow had entered a Confidentiality Agree-

**10.** Hester states that the purpose of its Confidentiality Agreement, which Barlow signed when she began her employment with Hester, is to protect Hester's proprietary business information. This policy prohibits employees from disclosing confidential information regarding Hester's business practices to third parties.

**11.** Ms. Barlow referred to these production rates when she raised the issues of the working conditions and compensation of female employees during the April, 1994, employees' meeting.

**12.** Barlow's son previously had worked for Hester as a summer employee.

**13.** It does not appear from the record that the trial court ever formally decided the bifurcation issue. In the January, 1995, order, however, the trial court noted Ms. Barlow's "objection to the Court's grant of leave to file the counterclaim[.]"

**14.** It appears that the trial court deferred ruling upon Ms. Barlow's motion in limine until after the parties had prepared written arguments of their positions on the "after-acquired evidence doctrine" in light of the recent United States Supreme Court case of *McKennon v. Nashville*

*Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). The record suggests that the court never formally ruled upon Ms. Barlow's motion subsequent to this hearing.

**15.** The court also granted other portions of the defendants' motion in limine and held inadmissible all evidence regarding (1) any allegations of sexual misconduct by Hester's Vice President of Operations, Charles Eye, with regard to Hester employees; (2) any allegations of sexual harassment by defendant Davidson with regard to Hester employees; (3) the individual defendants' character and reputation; and (4) the defendants' financial condition or net worth (however, this financial evidence would be admissible after the jury rendered a verdict defining the defendants' liability and awarding compensatory damages). Nevertheless, the court denied the defendants' request to exclude evidence of Ms. Barlow's attempts to obtain premium pay for employees in Hester's sizing department.

**16.** The trial court's limitation of Ms. Barlow's recoverable damages was based upon the United States Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

ment with Hester, she had not breached this contract. Subsequently, Barlow moved for a new trial. By order dated September 13, 1995, the trial court denied Barlow's motion.

## II.

## DISCUSSION

On appeal to this Court, Ms. Barlow asserts that the trial court erred by: (1) refusing to bifurcate Barlow's employment discrimination claims and Hester's breach of contract counterclaim; (2) excluding evidence concerning Hester's allegedly discriminatory motives; (3) admitting evidence of Barlow's alleged misconduct that Hester discovered after her termination; (4) instructing the jury as to the definition of an "at will" employee; (5) instructing the jury that Barlow must prove, by a preponderance of the evidence, that "but for" her protected class she would not have been terminated[17]; (6) instructing the jury that it must consider any reason Hester provided regarding its decision to terminate Barlow regardless of whether this reason was a good reason or actually motivated Hester to fire Barlow; and (7) instructing the jury that Barlow must prove, by a preponderance of the evidence, that Hester's stated reason was a pretext for discrimination. We will address each assignment in turn.

## A.

### Bifurcation

Ms. Barlow first assigns as error the trial court's refusal to bifurcate her employment discrimination claims and Hester's breach of contract counterclaim. During the December 23, 1994, motion hearing, the trial court deferred ruling on the bifurcation issue. A review of the record in this case suggests that the court never formally decided whether the two cases should be consolidated or bifurcated for purposes of trial.

Barlow maintains that the trial court should have bifurcated the two matters be-

cause evidence of her alleged breach of contract was not relevant to her discrimination and retaliation claims and served only to prejudice the jury. Moreover, Barlow urges that the consolidation of the claims and counterclaim may have confused the jury since the two issues are separate and distinct. In response, the defendants assert that the trial court properly exercised its discretion in refusing to bifurcate the claims and counterclaim. *Citing* W.Va.R.Civ.P. 13(b), (e), 42(c); *Bowman v. Barnes,* 168 W.Va. 111, 117, 282 S.E.2d 613, 617 (1981); *Holland v. Joyce,* 155 W.Va. 535, 541, 185 S.E.2d 505, 510 (1971). Additionally, the defendants contend that consolidation of the claims served the interests of judicial economy because both claims involved the same parties and arose out of Barlow's employment with Hester. Finally, the defendants urge that Barlow did not make the requisite showing that bifurcation would promote the interests of judicial economy and convenience to the parties and avoid prejudice. *Citing Bennett v. Warner,* 179 W.Va. 742, 748, 372 S.E.2d 920, 926 (1988).

▆ Upon a review of the record, we find that the trial court did not abuse its discretion by denying the plaintiff's motion to bifurcate the proceedings. Rule 42 of the West Virginia Rules of Civil Procedure permits a trial judge to either consolidate or bifurcate related causes of action:

"(a) *Consolidation of actions in same court.* —— When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay[.]

\*　　\*　　\*　　\*　　\*　　\*

"(c) *Separate trials.* —— The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-

---

**17.** The West Virginia Human Rights Commission filed a brief in this case as Amicus Curiae asserting that the trial court's instruction regarding Ms. Barlow's *prima facie* case contradicted this

Court's recent holding in *Barefoot v. Sundale Nursing Home,* 193 W.Va. 475, 457 S.E.2d 152 (1995).

claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues[.]"

Under this Rule, the trial court has discretion to sever claims in furtherance of convenience or economy, or to prevent prejudice. *Anderson v. McDonald,* 170 W.Va. 56, 61, 289 S.E.2d 729, 735 (1982). Although only one of these criteria need be met in order to justify bifurcation, as an appellate court, we will not interfere with a bifurcation decision in the absence of an abuse of that discretion. *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 377, 175 S.E.2d 452, 456–57 (1970). *See also Bennett v. Warner,* 179 W.Va. at 748, 372 S.E.2d at 926.

 Although a trial judge must be neutral in the area of trial management, the judge does not have to be a passive spectator. Thus, we recognize that a trial judge has broad discretion in managing his or her docket, including trial procedure and the conduct of trial. The discretion to rule on a Rule 42(c) motion, however, has limits and should be exercised only after an examination of the individual case. We, therefore, are required to examine the record with a view of whether the ruling of the trial court constituted an abuse of the discretion afforded judges in managing their dockets, including trial management and the conduct of the trial itself.

 In determining whether the trial judge abused his or her discretion, we must examine whether the party requesting bifurcation made the proper showing before the trial court. In a related criminal context, we recently clarified the moving party's burden in Syllabus Point 5 of *State v. LaRock,* 196 W.Va. 294, 470 S.E.2d 613 (1996):

"The burden of persuasion is placed upon the shoulders of the party moving for bifurcation. A trial judge may insist on an explanation from the moving party as to why bifurcation is needed. If the explanation reveals that the integrity of the adversarial process which depends upon the truth-determining function of the trial process would be harmed in a unitary trial, it would be entirely consistent with a trial court's authority to grant the bifurcation motion."

The moving party's explanation regarding the necessity of bifurcation must also include the justification criteria we enunciated in Syllabus Point 6 of *Bennett v. Warner, supra:*

"Parties moving for separate trials of issues pursuant to West Virginia Rule of Civil Procedure 42(c), or the court if acting *sua sponte,* must provide sufficient justification to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial economy, convenience of the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants."

 Despite these requirements on the moving party, we emphasize that because the trial court has such broad discretion in this arena, rarely will we find that its ruling on a bifurcation motion constitutes reversible error. Consistent with this notion, we caution:

"[t]o demonstrate that the trial court abused its discretion, a showing of 'compelling prejudice' is required. 'Compelling prejudice' exists where a [party] can demonstrate that without bifurcation he or she was unable to receive a fair trial ... and that the trial court could afford no protection from the prejudice suffered. In short, this Court will grant relief only if the appellant can show prejudice amounting to fundamental unfairness." *LaRock,* 196 W.Va. at 315, 470 S.E.2d at 634.

 Given the facts in the present case, we are unable to declare either that the trial court abused its discretion or that the plaintiff suffered "compelling prejudice" as a result of the consolidated trial. The record indicates that the plaintiff requested the trial court to bifurcate the claims in response to defendant Hester's motion for leave to file its counterclaim: "A breach of a contract claim involving two of the parties in this discrimination case is related only that they involve the same parties. However, having the jury hear both claims will only create confusion and cause a very complicated litigation involving separate and distinct claims." While Ms. Barlow attempts to address the issue of avoidance of prejudice, she fails to clarify precisely how consolidation of these claims

would confuse the jury. She further neglects to indicate how bifurcation of the claims would promote judicial economy and convenience to the parties. Therefore, we find that, on the basis of the plaintiff's statement as to why bifurcation would be proper in this matter, the trial court did not abuse its discretion in refusing to bifurcate the proceedings.

■ Even if the trial court erred by consolidating the trials, we find that such error was harmless and most certainly did not rise to the level of prejudice required for reversal of a jury's verdict. Although the plaintiff could have been prejudiced by the consolidation of these matters, the actual trial outcome suggests that this possibility did not materialize. Not only did the jury deny the plaintiff relief for her discrimination and retaliation claims, it also foreclosed defendant Hester's recovery on its breach of contract counterclaim. Thus, the jury actually ruled in favor of the plaintiff with regard to the precise claim she wished to bifurcate. Accordingly, we find the trial court committed no reversible error by denying Ms. Barlow's bifurcation motion.[18]

■ Although we do not find here the compelling basis needed to reverse a trial court's exercise of its discretion on a motion to bifurcate, we do want to add a note of caution. Trial courts ruling on motions to assert counterclaims and motions to bifurcate should take into account the impact that their decision will have on not only the pending litigation but also on other, potential litigants. In the typical Human Rights case, for example, there is a considerable disparity in resources between the plaintiff (who, in discharge cases, is often unemployed) and the defendant employer. If the defendant is permitted wide latitude in asserting counterclaims, it ups the ante considerably for the plaintiff and makes prosecution of the case more difficult. Moreover, such latitude would permit an employer to send to its other employees an implicit message that says, "If you sue me, I'll sue you back, and it will cost you dearly." Needless to say, the message could have a considerable chilling effect on other employees who might be contemplating, or who in the future might contemplate, filing a Human Rights claim against the employer. In addition, trial courts should carefully consider in the bifurcation context whether trying a counterclaim with the principal claim would create a red herring that could either confuse the jury or otherwise affect the verdict.

We also feel compelled to add a word about the particular counterclaim in this case. The defendants assert that the plaintiff breached her promise of confidentiality when she discussed facts about Hester's operations with her lawyer and with her son. We must make clear that we do not, with this ruling, sanction a claim against an employee or former employee for disclosing information to his or her attorney in the course of discussing with him or her a potential Human Rights Act claim. It is beyond us how counsel could advise a client in the plaintiff's circumstances without going into the facts. Not only would Hester's interests in confidentiality not be threatened by such a limited disclosure (because the lawyer's own duty of confidentiality would prevent him or her from disclosing any communications from his or her client except as authorized by the Rules of Professional Conduct), but

---

18. At this juncture, we note that we have recently established guidelines for determining the propriety of a trial court's ruling on bifurcation motions in criminal cases. Syllabus Point 6 of *LaRock, supra,* provides guidance with regard to bifurcating the guilt and sentencing phases of murder trials:

"Although it virtually is impossible to outline all factors that should be considered by the trial court, the court should consider when a motion for bifurcation is made: (a) whether limiting instructions to the jury would be effective; (b) whether a party desires to introduce evidence solely for sentencing purposes but not on the merits; (c) whether evidence would be admissible on sentencing but would not be admissible on the merits or vice versa; (d) whether either party can demonstrate unfair prejudice or disadvantage by bifurcation; (e) whether a unitary trial would cause the parties to forego introducing relevant evidence for sentencing purposes; and (f) whether bifurcation unreasonably would lengthen the trial." However, we decline to apply this framework to the trial court's exercise of discretion in the present case because the jury verdicts indicate the plaintiff was not prejudiced by the trial court's refusal to bifurcate.

the disclosure would be necessary for the attorney to adequately represent the client in the Human Rights Act claim. Moreover, were an employer to discharge or otherwise discipline a current employee for divulging information to an attorney in the course of seeking representation or advice regarding a Human Rights Act claim, the employer would encounter serious problems under the Act's anti-retaliation provision, W. Va.Code 5–11–9(7). We also think a trial court might view with some skepticism the seriousness of that part of Hester's counterclaim that sought damages for the disclosures that Ms. Barlow made to her son, who was himself a former employee.

## B.

### Evidentiary Rulings

Ms. Barlow next assigns error to the trial court's evidentiary rulings in this case. In particular, she states that the trial court improperly excluded evidence of defendant Davidson's drinking habits and the individual defendants' sexual and romantic relationships with employees because such evidence would have established their discriminatory motives. Barlow also maintains that the court erroneously admitted evidence of her alleged misconduct that Hester discovered after it had terminated her.

### 1. Exclusion of Motive Evidence

Ms. Barlow contests the trial court's ruling whereby it granted the defendants' motion in limine and excluded evidence of the individual defendants' drinking habits and romantic relationships with Hester employees. In response to the defendants' motion, the trial

court found all evidence of defendant Davidson's drinking habits, including his prior conviction for driving under the influence of alcohol, to be inadmissible. The trial court adopted the reasoning set forth by the defendants in their memorandum in support of their motion. In this regard, the defendants argued that defendant Davidson's social activities were not relevant to Ms. Barlow's claims and that such evidence would be highly prejudicial. *Citing* W.Va.R.Evid. 401, 402.[19] Upon rendering this decision, the trial court noted Ms. Barlow's objection to the ruling.

Ms. Barlow contends that evidence of Davidson's drinking habits is relevant to her claims of discrimination and retaliation. Because the issue of employment discrimination involves the employer's state of mind and motivation, Ms. Barlow submits that she should have been allowed to introduce evidence of Davidson's other wrongs and bad acts from which the jury could have drawn inferences regarding his mental state. *Citing* W.Va.R.Evid. 404(b) (evidence of witness's prior bad acts may be admissible to show intent or motive). Additionally, Barlow argues that if the jury had known of Davidson's drinking habits, it may not have believed that her statement blaming Davidson for the death of Krista Smith was a legitimate reason for her termination.[20] By contrast, the defendants reply that Davidson's drinking habits are not relevant to Barlow's claims in this case. They also assert that even if such "bad acts" evidence was admissible pursuant to Rule 404(b) of the West Virginia Rules of Evidence, Barlow has failed to establish the necessary prerequisites for the introduction of this evidence.[21]

---

**19.** Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Further examining relevant evidence, Rule 402 declares that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of West Virginia, by these rules, or by other rules adopted by the Supreme Court of Appeals. Evidence which is not relevant is not admissible."

**20.** Ms. Barlow believed that she was terminated, in part, in retaliation for comments she had made regarding Davidson's drinking habits and the death of her close friend, Krista Smith.

**21.** *Citing* Syl. pt. 4, *State v. Smith*, 190 W.Va. 374, 438 S.E.2d 554 (1993), *quoting* Syl. pt. 8, *TXO Production Corp. v. Alliance Resources Corp.*, 187 W.Va. 457, 419 S.E.2d 870, *cert. granted in part*, 506 U.S. 997, 113 S.Ct. 594, 121 L.Ed.2d 532 (1992), *aff'd*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), *modified, State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994) (clarifying standard for admitting Rule 404(b)

Likewise, the trial court also granted the defendants' motion in limine to exclude all evidence of the individual defendants' sexual and romantic relationships with Hester employees. Again, the court ratified the defendants' basis for this decision as recited in their supporting memorandum. In this respect, the defendants asserted that the relationships evidence was irrelevant to Barlow's claims and unduly prejudicial. *Citing* W.Va. R.Evid. 401, 402, 403.[22] They also determined that this evidence constituted inadmissible hearsay. *Citing* W.Va.R.Evid. 801, 802, 803. As before, the trial court noted Barlow's objection to this ruling.

Ms. Barlow argues that the relationships evidence is relevant because it establishes that the defendants had romantic encounters with younger, female employees and that they treated these employees differently than they treated her. Thus, this evidence would provide examples of the defendants' interactions with other Hester employees from which the jury could infer the defendants' allegedly discriminatory motive. On the other hand, the defendants contend that the relationships evidence constitutes irrelevant and unduly prejudicial personal information that is not related to Barlow's discrimination claims. *Citing* W.Va.R.Evid. 403; *State v. Adkins,* 170 W.Va. 46, 55, 289 S.E.2d 720, 729 (1982) ("evidence regarding sexual predilections or conduct is not admissible at trial unless it is clearly relevant"); *State v. Lawson,* 125 W.Va. 1, 5–6, 22 S.E.2d 643, 645 (1942). Lastly, the defendants assert that the relationships evidence which the plaintiff sought to introduce was properly excluded as inadmissible hearsay. *Citing* W.Va.R.Evid. 801, 802.

■ We frequently have reviewed a trial court's rulings as they relate to the admission and exclusion of evidence and have held that "[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion." Syl. pt. 1, *Voelker v. Frederick Business Properties Co.,* 195 W.Va. 246, 465 S.E.2d 246 (1995). (Citations omitted). *See also* Syl. pt. 2, *State v. Perolis,* 183 W.Va. 686, 398 S.E.2d 512 (1990) ("[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion" (Citations omitted).). Recently, we reiterated the trial court's broad discretion in Syllabus Point 1, in part, of *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995):

"The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard."

■ It is true that the plaintiff in this civil case is entitled to have the jury consider her theory of the case that is supported by law and that has some foundation in evidence. Testimonial evidence, however, must be relevant and material. Moreover, a plaintiff has no right to either present witnesses to testify or to cross-examine adverse witnesses regarding facts which are not "of consequence to the determination of the action." *See* W.Va.R.Evid. 401. In the present case, we find that the trial court did not

---

evidence) (" '[p]rotection against unfair prejudice from evidence admitted under Rule 404(b) of the *West Virginia Rules of Evidence* [1985] is provided by: (1) the requirement of Rule 404(b) that the evidence be offered for a proper purpose; (2) the relevancy requirement of Rule 402—as enforced through Rule 104(b); (3) the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice; and, (4) Rule 105, which provides that the trial court

shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted' ").

22. Rule 403 of the West Virginia Rules of Evidence states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

abuse its discretion by granting the defendants' motion in limine to exclude evidence of defendant Davidson's drinking habits or the individual defendants' alleged sexual and romantic relationships with Hester employees. Ruling upon this motion, the trial court determined that such evidence, which Ms. Barlow claims is relevant to show the defendants' motive in firing her, was inadmissible pursuant to Rules 401, 402, and 403 of the West Virginia Rules of Evidence.

While this evidence may indeed have been slightly relevant to the plaintiff's claims of sex and age discrimination [23] and retaliatory discharge,[24] admission of this evidence poses a grave danger that the jury would misconstrue such information or confuse the issues to which it relates. Furthermore, the balancing test of Rule 403 requires the exclusion of evidence if, as here, "its probative value is substantially outweighed by the danger of unfair prejudice." Again, while such evidence may be relevant to Ms. Barlow's causes of action, such a relationship to the defendants' motive is very attenuated given other, more direct evidence of the rationale underlying her dismissal. Recently, we stated that "[o]nly rarely, in extraordinary circumstances, will we from a vista of a cold appellate record reverse a trial court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect. This is not such an occasion." *State v. Potter,* 197 W.Va. 734, 751, 478 S.E.2d 742, 759 (1996). Thus, finding no abuse of discretion, we hold that the trial court properly excluded the motive evidence proffered by the plaintiff.[25]

## 2. *Admission of After–Acquired Evidence*

During the proceedings below, the plaintiff filed a motion in limine seeking to exclude "all evidence discovered by Defendants after Ms. Barlow's termination." The trial court deferred ruling on this motion pending the parties' filing of memoranda applying the recent United States Supreme Court decision, *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), to the facts of the present case. Following this deferment, the record is devoid of any subsequent ruling by the court on this motion.[26]

Ms. Barlow contends that all after-acquired evidence[27] in this case should be excluded because it is not related to her discrimination or retaliation claims. Rather, she maintains that she was prejudiced by the admission of this evidence because these instances of alleged misconduct are not related to her termination. *Citing* W.Va.R.Evid. 403.

23. Evidence of the individual defendants' romantic relationships may have been relevant to Ms. Barlow's claims of age and sex discrimination if, in fact, the relationships involved younger, female Hester employees who were treated differently than she was.

24. Information regarding defendant Davidson's drinking habits, and Ms. Barlow's comments thereon, would be relevant to show Davidson's allegedly retaliatory motive could have been influenced, in part, by Barlow's statements.

25. Although the trial court excluded the evidence, it failed to perform the Rule 403 balancing on the record as we have mandated in prior cases. *See* Syl. pt. 2, *State v. McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994); *Arnoldt v. Ashland Oil, Inc.,* 186 W.Va. 394, 409, 412 S.E.2d 795, 809 (1991). Our review of the record indicates that the trial court merely adopted the reasoning of the defendants' memorandum of law without further specification. We will not reverse for failure to make such a balancing, however, if the considerations germane to bal-

ancing probative value versus prejudicial effect are readily apparent from the record. We find that there is enough of a record to support the trial court's ruling. As we conclude that the trial court did not abuse its discretion by excluding the aforementioned evidence, we decline to evaluate the applicability of Rule 404(b) of the West Virginia Rules of Evidence or our review of evidence admitted pursuant to this rule set forth in Syllabus Point 4 of *State v. Smith, supra.*

26. While the trial court did not specifically rule on the admissibility of after-acquired evidence, it did exclude from the plaintiff's recoverable relief, in accordance with the *McKennon* decision, reinstatement, front pay, and any other damages accruing after the defendants discovered this evidence on October 13, 1994.

27. The primary after-acquired evidence in this case concerns Ms. Barlow's incorrect representations on her employment application, *see* text accompanying note 9, *supra,* and the circumstances surrounding her alleged disclosure of confidential information in violation of Hester's Confidentiality Agreement.

The defendants respond that the trial court properly admitted this evidence because it was independently relevant regarding defendant Hester's breach of contract counterclaim. They assert that the evidence did not unfairly prejudice Barlow's claims because the defendants did not use these instances of misconduct to justify her discharge. Moreover, the defendants contend that the evidence of Ms. Barlow's application fraud was admissible as impeachment evidence to attack her credibility. *Citing State v. Richey*, 171 W.Va. 342, 349, 298 S.E.2d 879, 886 (1982) (permitting cross-examination of witness regarding acts bearing directly on his or her veracity). Finally, the defendants urge that Barlow cannot raise this issue on appeal because she failed to object to the introduction of this evidence or otherwise preserve this issue for appeal.[28] *Citing Estep v. Brewer*, 192 W.Va. 511, 515, 453 S.E.2d 345, 349 (1994) (precluding appellate review where party did not object to introduction of evidence at trial); *State v. Parsons*, 181 W.Va. 56, 63, 380 S.E.2d 223, 230 (1989) (where trial court has not ruled on motion in limine, party must object to introduction of evidence at trial in order to preserve right to appeal admission of evidence); *Michigan Nat'l Bank v. Mattingly*, 158 W.Va. 621, 626, 212 S.E.2d 754, 757–58 (1975) (precluding appellate review where party did not request or offer jury instruction on applicable law).

As we noted above, the admission or exclusion of evidence rests within the sound discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of such discretion. *See* Syl. pt. 1, *McDougal, supra;* Syl. pt. 1, *Voelker, supra;* Syl. pt. 2, *Perolis, supra.* Ordinarily, our inquiry would end here. However, in the present case we are faced with the unique situation of the admissibility of after-acquired evidence, that is, evidence which the defendant employer discovered after it terminated the plaintiff employee.

The United States Supreme Court recently addressed this very issue with regard to an age discrimination claim. In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the plaintiff employee sued the defendant employer claiming that she had been improperly terminated in violation of the Age Discrimination in Employment Act.[29] During discovery, the employer learned, through deposing the employee, that, while working for the employer, she had breached the employer's confidentiality policy by copying and removing certain business records. Pursuant to the employer's disciplinary policy, this confidentiality breach would have resulted in the employee's immediate termination. The Supreme Court determined that when an employer, after terminating an employee, discovers that the employee engaged in wrongdoing prior to his or her termination, such "after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered." 513 U.S. at 359, 115 S.Ct. at 885, 130 L.Ed.2d at 862.

> "In determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern 'for the relative moral worth of the parties,' . . . but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." 513 U.S. at 361, 115 S.Ct. at 886, 130 L.Ed.2d at 863. (Citation omitted).[30]

---

28. It does not appear, from a review of the record in this case, that counsel for Ms. Barlow objected to the introduction of after-acquired evidence at trial. In fact, Ms. Barlow's counsel raised the issues of her application fraud and disclosure of confidential information during the plaintiff's case-in-chief.

29. The Age Discrimination in Employment Act prohibits age discrimination by making it "unlawful for an employer (1) . . . to discharge any individual or otherwise discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1) (1994).

30. The Court concluded "as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." 513 U.S. at 362, 115 S.Ct. at 886, 130 L.Ed.2d at 863.

Thus, the United States Supreme Court has held after-acquired evidence to be admissible in an employment discrimination case.

We agree with the Supreme Court's determination that after-acquired evidence of an employee's wrongdoing is admissible in an employment discrimination case. However, we caution that such evidence is admissible only for the limited purpose of determining the remedies available to the plaintiff employee. In this manner, evidence of the employee's pretermination wrongdoing is relevant particularly where such misconduct would have justified his or her termination in accordance with the employer's disciplinary policy. We emphasize, though, that after-acquired evidence is not admissible to show that the employer would have had a justified reason to terminate the employee separate and apart from the allegedly discriminatory firing. Addressing this precise issue, the United States Supreme Court noted " 'proving that the same decision would have been justified ... is not the same as proving that the same decision would have been made.' " *McKennon*, 513 U.S. at 360, 115 S.Ct. at 885, 130 L.Ed.2d at 862, *quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 252, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268, 289 (1989) (plurality opinion). (Citation omitted).

Accordingly, we hold that in an employment discrimination case when an employer discovers, after terminating an employee, evidence of the employee's wrongdoing that he or she committed before his or her discharge, a trial court may, with the exercise of reasonable discretion, admit such evidence for the limited purpose

of determining which remedies are properly available to the plaintiff employee. Consistent with Rule 105 of the West Virginia Rules of Evidence, we find that the trial court, upon admitting after-acquired evidence of an employee's wrongdoing, should instruct the jury as to the evidence's limited admissibility.

 While the instant case presents a somewhat different situation in that the misconduct evidence was relevant with regard to both the appropriate relief and the breach of contract counterclaim, we conclude that the trial court did not abuse its discretion by admitting after-acquired evidence of Ms. Barlow's application fraud and breach of Hester's confidentiality policy. Upon admitting this evidence, the trial court specifically considered the *McKennon* decision and applied those directives to determine the remedies available to Ms. Barlow. Thus, we find that the trial court properly admitted the after-acquired evidence of the plaintiff's misconduct.

### C.

### *Jury Instructions*

As her third assignment of error, Ms. Barlow asserts that the trial court improperly instructed the jury in this case.

#### 1. *Definition of "At Will" Employee*

 First, Ms. Barlow objects to the "at will" employee instruction [31] given in this case. Upon approving and granting this instruction, the trial court noted Barlow's objection.[32] On appeal to this Court, Barlow asserts that the "at will" employee instruction was not relevant to either her discrimi-

---

31. The trial court's instruction regarding "at will" employment provides:

"You are instructed that the Plaintiff, Phyllis Barlow, was an 'at will' employee of Hester Industries. That is, Hester Industries had the right to fire her with or without cause, provided that Hester Industries could not fire or terminate Phyllis Barlow because of her age or sex, nor could it fire or terminate her in retaliation for engaging in any protected acts under the W. Va. Human Rights Act.

"You are therefore instructed that if you find from the evidence that Hester Industries terminated Phyllis Barlow—and that the termination was not because of age or sex discrimination, nor was it in retaliation for her engaging in protected acts under the W. Va.

Human Rights act [*sic*], then you should find against the Plaintiff and for all of the Defendants, even if you otherwise might disagree with the reasons made known to you by Hester Industries for her termination, because an 'at will' employee may be terminated with or without cause."

The trial court noted, on the face of the instruction, that it was "granted over objection."

32. Counsel for Ms. Barlow objected to the "at will" employment instruction as follows:

"I believe it's redundant and could be prejudicial. I think the language that's already in the document is—toward using it. And to go further I think it prejudices plaintiff."

nation and retaliation claims or to Hester's breach of contract counterclaim. Moreover, Barlow argues that this instruction unnecessarily confused the jury as to the standard to be applied to determine whether her termination by the defendants was discriminatory because it instructed that the defendants could terminate Barlow "with or without cause."

The defendants reply that the "at will" employee instruction did not confuse the jury because it accurately recited the applicable law. They also claim that the propriety of an "at will" instruction in an employment discrimination case is well-recognized by this Court. Citing *Harless v. First Nat'l Bank in Fairmont*, 162 W.Va. 116, 119–20, 246 S.E.2d 270, 273 (1978) (noting that West Virginia recognizes the "at will" employment doctrine); *Wright v. Standard Ultramarine & Color Co.*, 141 W.Va. 368, 90 S.E.2d 459 (1955).

We agree with the defendants that the instruction accurately states the law, as it presently exists. Although we also agree with Ms. Barlow that the instruction was neither necessary nor necessarily helpful to the jury, the instruction was arguably relevant as background and was not likely to have misled or confused the jury. Under those circumstances, we cannot find error in its usage.

2. *Barlow Must Prove, by a Preponderance of the Evidence, That "But For" Her Protected Class She Would Not Have Been Terminated*

Ms. Barlow next argues that the trial court improperly instructed the jury that it must find, by a preponderance of the evidence, that "but for" her protected class she would not have been terminated.[33] The trial court granted this instruction with no objection.[34] Barlow argues that a plaintiff in an employment discrimination case need only show an inference of discrimination by the defendant employer in order to establish his or her *prima facie* case. Thus, requiring Barlow to prove, by a preponderance of the evidence, that "but for [her] sex or age, she would not have been disciplined and discharged" improperly raises the burden of proof necessary to establish a *prima facie* case of discrimination. Citing *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 457 S.E.2d 152 (1995); *Conaway v. Eastern Associated Coal Corp.*, 178 W.Va. 164, 358 S.E.2d 423 (1986).

The defendants respond that Barlow did not properly preserve this issue for appeal because she failed to object to the trial court's giving of this instruction. Citing W.Va.R.Civ.P. 51; *Muzelak v. King Chevrolet, Inc.*, 179 W.Va. 340, 368 S.E.2d 710 (1988). In addition, the defendants state that if Ms. Barlow had desired to rely upon the *Barefoot* case in the proceedings below, she could have brought the new decision to the court's attention, but she failed to do so. Finally, the defendants acknowledge that while *Barefoot* may require a plaintiff to show an inference of discrimination in order to establish a *prima facie* case, the plaintiff is still obligated to prove his or her *prima facie* case by a preponderance of the evidence. Citing *Barefoot v. Sundale Nursing*

---

**33.** Due to the difference in the elements of a discrimination and a retaliation claim, the "but for" instruction pertains only to Barlow's age and sex discrimination claims. The court's instruction regarding Ms. Barlow's *prima facie* case for her age and sex discrimination claims states, in part:

"To prove a prima facie [*sic*] case, the Plaintiff must prove by a preponderance of the evidence: (1) That she is a member of a protected class (female) or over 40 years of age; (2) That Hester Industries and the individual Defendants disciplined and discharged her; and (3) *That but for the Plaintiff's sex or age, she would not have been disciplined and discharged. If the Plaintiffs [sic] fail [sic] to prove any of these*

three elements by a preponderance of the evidence, you must find in favor of the Defendants. Because discrimination is essentially an element of the mind, *the Plaintiff must prove direct or indirect evidence linking her discipline and discharge to her sex or age, so as to give rise to a reasonable inference that the discipline and discharge were based on the fact that she is a woman, or that she is over 40 years of age.*" (Emphasis added).

The trial court noted, on the face of the instruction, that it was "granted" with "no objection."

**34.** When the court asked if the parties had any objections to this instruction, counsel for Ms. Barlow replied, "No, I'm not going to object, Your Honor."

*Home, supra.* Thus, the defendants claim this instruction properly apprised the jury of the applicable law.

[redacted] The defendants are correct that appellate challenges to jury instructions that were not objected to at trial will fail unless the error constitutes plain error. Generally, a party's failure to object to a jury instruction will preclude appellate review of the instruction. *See* W.Va.R.Civ.P. 51. This court has consistently required that a formal objection be made to the jury charge, unless it is plainly apparent from the discussion between the parties and the judge that the judge was aware of a party's dissatisfaction with the instruction, as read to the jury, and the specific basis for the claimed error or omission. The only other exception that may be made is when there is plain error, *i.e.,* we may review the instruction when the failure to review it would result in a miscarriage of justice or in an obvious misapplication of the law. *See* Syl. pt. 1, *Muzelak, supra, quoting* Syl. pt. 1, *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974) (" '[w]here an objection is made to an instruction for the first time on appeal and such instruction is not so deficient so as to require invocation of the "plain error" rule, in consonance with Rule 51, W.Va. R.C.P. [*sic* ], this Court will not consider the late objection' ").

[redacted] Under the plain error standard, Ms. Barlow's challenge to the "but for" language in the instruction cannot be sustained. We said in *Barefoot* that the use of the "but for" language in *Conaway* 's statement of the *prima facie* case was "unfortunate." *Barefoot,* 193 W.Va. at 484, 457 S.E.2d at 161, *citing Conaway,* 178 W.Va. at 170, 358 S.E.2d at 429. In *Barefoot,* we were concerned that the "but for" language was susceptible to an interpretation that would require a plaintiff, in establishing a *prima facie* case, to do more than offer a set of relatively objective and easily attained facts sufficient to establish an inference of discrimination. 193 W.Va. at 484, 457 S.E.2d at 161. We thus discouraged, and continue to do so, the use of the "but for" phrase in describing the *prima facie* case. But, given the frequency with which this Court has repeated the *Conaway* formulation and its appearance in other contexts, *see Barefoot,* 193 W.Va. at 484 n. 12, 457 S.E.2d at 161 n. 12, we would be hard-pressed to now characterize its use by a trial court as reversible error, let alone plain error. Moreover, and more importantly, the instruction in this case also included explanatory language immediately following the "but for" element that described the plaintiff's burden in the *prima facie* case as one of merely adducing direct or indirect evidence to warrant "a reasonable inference that the [plaintiff's] discipline and discharge were based on the fact that she is a woman, or that she was over 40 years of age." That is just how we described the burden in both *Conaway* and *Barefoot.*[35]

[redacted] As we urged in both *Barefoot* and *Skaggs,* jury instructions should be written to convey clearly for the lay person the operation of discrimination and should avoid obscuring the forest of discrimination with the trees of the three-step analysis from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Barefoot,* 193 W.Va. at 483, 457 S.E.2d at 160. *See Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 74, 479 S.E.2d 561, 584 (1996); *Barefoot,* 193 W.Va. at 485 n. 16, 492–93, 457 S.E.2d at 162 n. 16, 169–70. Thus, a court may charge the jury

> "that the plaintiff bears the burden of proving by a preponderance of the evidence that the alleged forbidden bias was a motivating factor in the defendant's decision to take an adverse action against the plaintiff. If the plaintiff carries that burden, then the jury should find for the plaintiff unless the defendant can prove by a preponderance of the evidence that it would have taken the same action in the

35. *See Barefoot,* 193 W.Va. at 484, 457 S.E.2d at 161, *quoting Conaway,* 178 W.Va. at 170–71, 358 S.E.2d at 429–30:

> " 'What is required of the plaintiff is to show some evidence which would sufficiently link the employer's decision and the plaintiff's status as a member of a protected class so as to give rise to an inference that the employment decision was based on an illegal discriminatory criterion.' " (Footnote omitted).

absence of the impermissible motive." Syl. pt. 8, in part, *Skaggs, supra; see also Barefoot,* 193 W.Va. at 485 n. 16, 457 S.E.2d at 162 n. 16.

Alternatively, a court could decide that framing the evidence in the *McDonnell Douglas/Barefoot* paradigm would be helpful in focusing the jury on the critical evidentiary issues. Thus, in this case, an instruction could note that the plaintiff has proved that she is a woman over forty years of age who was discharged by the defendant and that she has offered evidence that she performed her job competently. The defendants have offered evidence contesting whether the plaintiff's job performance was adequate and explaining the discharge as based on the plaintiff's misconduct. The jury must determine, then, whether the plaintiff has proved that the defendants' explanation was pretextual and that the discharge was motivated, instead, by a bias against women or workers over forty. If the plaintiff has failed to prove that the defendants' explanation was a pretext, but has shown that an illicit bias against

women or older workers nevertheless contributed to the discharge decision, then the plaintiff must prevail unless the employer has proved by a preponderance of the evidence that the decision to discharge would have been made even in the absence of the unlawful motive.[36]

3. *The Jury Must Consider Any Reason Provided by Hester Regarding Its Decision to Terminate Barlow Regardless of Whether this Reason Was a Good Reason or Actually Motivated Hester to Discharge Barlow*

Ms. Barlow further contends that the trial court improperly instructed the jury that it must consider any reason provided by Hester regarding its decision to terminate Barlow regardless of whether this reason was a good reason or actually motivated Hester to discharge her.[37] With respect to Barlow's sex and age discrimination claims, the court granted this instruction with no objection. However, with regard to the retaliation claim, counsel for Barlow objected to the trial

**36.** Accordingly, the last clause of the challenged instruction uses an incorrect article. The instruction concludes, "the ultimate burden of persuasion remains with the Plaintiff to prove that her sex or age was *the* reason for her treatment." It should read that the plaintiff's burden is to prove that her sex or age was "*a* reason for her treatment."

**37.** With regard to Ms. Barlow's age and sex discrimination claims, the trial court instructed, in part:

"[I]f the Plaintiff meets the requirements for proving her prima facie [*sic*] case, you must consider any legitimate, nondiscriminatory reason offered by Hester and the individual Defendants for their discipline and the discharge of the Plaintiff. A legitimate, nondiscriminatory reason is any reason or explanation unrelated to the Plaintiff's sex: it can be any reason except the fact that the Plaintiff is a woman or over age [*sic*] 40 years of age. The Defendants bear only the burden of explaining clearly a legitimate, nondiscriminatory reason for their actions: They do not have to persuade you that they were actually motivated by the reason they offer. The reason offered by the Defendants need not be a particularly good one, nor one that you agree with or would have acted upon. In considering the Defendants' legitimate nondiscriminatory reason, you are not to second guess or to otherwise substitute your judgment for that of the Defen-

dants, regardless of what opinion you may have about the reasonableness of their business practices."
The court "granted" this instruction with "no objection."
Similarly, the court's jury instruction regarding Barlow's retaliation claim directed, in part:
"If ... you find that the Plaintiff has proved facts establishing each of the four elements of her prima facie [*sic*] retaliation claim, then you must consider any legitimate nondiscriminatory [*sic*] reason offered by Hester and the individual Defendants for their discipline and discharge of the Plaintiff. Again, a legitimate, nondiscriminatory reason is any reason or explanation unrelated to the Plaintiff's protected activity. If the Defendants offer any credible evidence of their legitimate, nondiscriminatory reason; [*sic*] the Defendants do not have to persuade you that they were actually motivated by the reason they offer. The reason offered by the Defendants need not be a particularly good one, nor one that you agree with or would have acted upon. In considering the legitimate, nondiscriminatory reason, you are not to second-guess or to otherwise substitute your judgment for that of the Defendants, regardless of what opinion you may have about the reasonableness of their business practices."
The trial court noted, on the face of this instruction, that it was "granted as amended" with "no objection."

court's ruling granting this instruction.[38] Although counsel for Ms. Barlow raises this instruction as an assignment of error in his brief before this Court, he fails to provide an argument for this issue.

The defendants submit that since the jury found Barlow had not established a *prima facie* case with respect to her discrimination and retaliation claims, it never reached the issue of the defendants' articulated reasons for her discharge. *Citing Torrence v. Kusminsky*, 185 W.Va. 734, 747, 408 S.E.2d 684, 697 (1991) (judgment will not be reversed on appeal if alleged error would not have affected jury's verdict). Additionally, the defendants reiterate that Barlow did not properly preserve this issue for appeal because she failed to object to the trial court's granting of this instruction regarding her sex and age discrimination claims. *Citing* W.Va.R.Civ.P. 51; *Muzelak v. King Chevrolet, Inc., supra.* Thus, counsel for the defendants argue that even if this instruction constituted error, it was harmless error.

▮ The allegedly offending language in the instruction is: "The Defendants bear only the burden of explaining clearly a legitimate, nondiscriminatory reason for their actions: They do not have to persuade you that they were actually motivated by the reason they offer." Standing alone, the statement reflects the law. A defendant responding to the *prima facie* case has only a burden of production, and it meets that burden when it articulates a legitimate, nondiscriminatory reason for its actions. *E.g., Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Barefoot*, 193 W.Va. at 483, 457 S.E.2d at 160. In addition, a defendant can still prevail even if the jury concludes that the legitimate, nondiscriminatory reason offered by the defendant did not, in fact, motivate its actions. *E.g., St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 419 (1993); *Skaggs*, 198 W.Va.

at 73, 479 S.E.2d at 583. In such cases, which we think would be rare, the factfinder can conclude that some reason not articulated by the defendant actually prompted the challenged employment decision and that the reason was not a prohibited one.

▮ Nevertheless, when the above quoted language is read in the context of the entire instruction, *see* note 37, *supra*, it could create the impression that it is irrelevant under the law whether the defendants' articulated rationale was an actual motivator or was pretextual. That would *not* be an accurate statement of the law. As we stated in *Skaggs*, if the plaintiff proves the proffered reason was pretextual, then that proof combined with the *prima facie* case is sufficient, standing alone, to justify (though not compel) a judgment for the plaintiff. 198 W.Va. at 73, 479 S.E.2d at 583; *accord, Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418. Moreover, the instruction could be read to intimate that any rationale, even if it is a *post hoc* rationalization, is necessarily adequate to defeat the plaintiff's case, and that is not correct.

▮ We need not decide, however, whether the ambiguity in the instruction would be sufficiently critical to warrant reversal. We agree with the defendants that it does not rise to the level of plain error needed to reverse the unobjected-to instruction on the sex and age claims. We further agree with the defendants that inclusion of the ambiguity in the retaliation instruction was harmless because the jury specifically found that the plaintiff had not engaged in any protected activity. Thus, the defendant could not possibly have retaliated against the plaintiff within the meaning of the West Virginia Human Rights Act, W. Va.Code, 5–11–9(7) (1992).

---

**38.** Counsel for Ms. Barlow noted his objection to this instruction as follows:

"If the defendants offer any credible evidence of legitimate nondiscriminatory [*sic*] reasons, the defendants do not have to persuade you that they actually, that they were actually motivated by the reasons that they offered. I'm not sure that's the law. If motivation, it would seem to say if they offer it even if the jury believes they were discriminatory motives, if they offer it then it doesn't matter. It seems confusing to me. I would object on those grounds."

### 4. Barlow Must Prove, by a Preponderance of the Evidence, That Hester's Stated Reason for Terminating Her Was a Pretext for Discrimination

Finally, Barlow complains that the trial court improperly instructed the jury that she must prove, by a preponderance of the evidence, that Hester's stated reason for terminating her was a pretext for discrimination.[39] The trial court granted this instruction without objection as it concerns Barlow's age and sex discrimination claims. Likewise, counsel for Ms. Barlow did not object to this instruction with regard to her retaliation claim.[40]

Ms. Barlow argues that this instruction is an inaccurate statement of the applicable law because it improperly imposes the burden on Barlow to prove, by a preponderance of the evidence, that the defendant employer's stated reason was a pretext for discrimination. To the contrary, Barlow asserts that current authority in West Virginia requires that the plaintiff prevails unless the defendant employer can show, by a preponderance of the evidence, that he or she would have made the same decision in the absence of discrimination. Citing Barefoot v. Sundale Nursing Home, 193 W.Va. at 485 n. 16, 457 S.E.2d at 162 n. 16.

In response, the defendants contend that Barlow's analysis misstates the burdens in employment discrimination cases. They submit that while the defendant employer may have the burden of producing legitimate, nondiscriminatory reasons for its actions, the burden of persuasion remains with the plaintiff employee throughout the entire employment discrimination case. Citing St. Mary's Honor Center v. Hicks, 509 U.S. at 511, 113 S.Ct. at 2749, 125 L.Ed.2d at 419; Barefoot, supra.

The challenged language accurately states the plaintiff's burden in the context in which it was used, that is, in explaining the McDonnell Douglas/Barefoot paradigm. We have held, however, that a plaintiff can prevail, even though she has not proven pretext, if she has otherwise shown that a prohibited bias entered into the defendant's decision. E.g., Skaggs, 198 W.Va. at 74–76, 479 S.E.2d at 584–86; Barefoot, 193 W.Va. at 483, 457 S.E.2d at 160. In that context, the mixed motive case, the defendant has acted for unlawful as well as lawful reasons, and we have accordingly shifted the burden of persuasion on the issue of causation to the defendant and required it, to avoid liability, to prove that the same decision would have been made in the absence of the unlawful reason. Skaggs, 198 W.Va. at 75–76, 479 S.E.2d at 585–86; Barefoot, 193 W.Va. at 485 n. 16, 457 S.E.2d at 162 n. 16.

Thus, the instruction in question did not state an inaccuracy, but it did fail to include additional language concerning the mixed motive context. Whether that omission could have constituted error in this case is a matter we need not address because the plaintiff neither objected to the omission nor requested a mixed motive instruction. Nor can we say, after reviewing the record, that including the mixed motive instruction would have made a difference. As a consequence, we cannot reverse on that basis.

> "If the Defendants have offered credible evidence of the legitimate, nondiscriminatory reasons for their actions, the Plaintiff must persuade you, by a preponderance of the evidence, that the Defendants' reason or reasons are only a pretext for unlawful retaliation, that they are not the true motivations for the Defendants' actions."

The trial court noted, on the face of this instruction, that it was "granted as amended" with "no objection."

---

**39.** The trial court provided the following instruction with regard to Ms. Barlow's age and sex discrimination claims:

> "[A]fter Hester and the other Defendants have offered their nondiscriminatory reason for their discipline and discharge of the Plaintiff, she has the chance to rebut that reason by proving [sic] by a preponderance of the evidence, that the stated reason was merely a pretext for discriminatory motive. In other words, the Plaintiff must prove that the stated reason is not the true motivation for the Defendants' actions."

The court noted, on the face of this instruction, that it was "granted" with "no objection."

Similarly, the court instructed the jury with regard to Barlow's retaliation claim as follows:

**40.** Although counsel objected to other portions of this instruction, he did not object to the specific portion raised in this assignment of error.

## III.

### CONCLUSION

For the foregoing reasons, we affirm the decision of the Circuit Court of Hardy County.

Affirmed.