398 S.E.2d 512

**STATE of West Virginia**

v.

**Michael PEROLIS.**

No. 19607.

Supreme Court of Appeals of
West Virginia.

Oct. 18, 1990.

Orton A. Jones, Hedges, Jones, Whittier & Hedges, Spencer, for Michael Perolis.

Roger W. Tompkins, Atty. Gen., Kim Farha, Asst. Atty. Gen., Charleston, for State of W.Va.

NEELY, Chief Justice:

This case arises from the conviction of Michael Perolis on two counts of second degree sexual assault under *W.Va.Code*, 61–8B–4 [1984], one count of third degree sexual assault under *W.Va.Code*, 61–8B–5 [1984], and one count of first degree sexual abuse under *W.Va.Code*, 61–8B–7 [1984]. The crimes are alleged to have taken place on two occasions, the first incident occurring in May 1986, and the second occurring in the first weekend of May 1987.

In May 1986, the alleged victim, K.D.___, babysat Mr. Perolis' children in his house. She testified that while she was sleeping on the living room couch, Mr. Perolis committed third degree sexual assault, and first degree sexual abuse to her person[1]. Ms. D___ was 15 years old at the time.

One year later, in the first weekend of May 1987, Ms. D___ was again babysitting at the Perolis house. This time she slept in one of the bedrooms. She claims that Mr. Perolis came into the bedroom, and committed two separate second degree sexual assaults upon her[2]. The incident occurred soon after her sixteenth birthday.

Ms. D___ testified that between May 1986 and May 1987, she had a pattern of babysitting for the Perolises every other weekend. She would babysit on either Friday or Saturday evening, and then stay until the next morning. She testified that after the second incident, in May 1987, she never returned to the Perolis house. When asked whether she was certain that she never went back to the Perolis house after that night, she testified "I'm positive." Record, Vol. 1, p. 147.

Ms. D___ did not report either the May 1986 incident nor the May 1987 incident until July 24, 1987, while she was attending a church camp. One evening, Ms. D ___ related the incidents to a camp counselor in private, and then publicly to a group "campfire" meeting. Thereafter the authorities were notified.

Mr. Perolis assigns numerous errors to the trial proceeding. We reverse on two of the numbered assignments and, note another area where the trial court erred, which error is raised by appellant in his brief but not specifically numbered.

I.

The defense was prepared to prove that Ms. D___ *did* return to the Perolis house after the first weekend of May 1987. It attempted to show that on 6 June 1987, Ms. D___ was again babysitting at the Perolis house, and at the request of her employers, she wrote down the West Virginia Lottery numbers for that day. The defense had a

---

1. When a person over the age of sixteen engages in sexual intrusion with one under sixteen and more than four years his junior, the crime is third degree sexual assault. *W.Va.Code* 61–8B–5 [1984].

 When a "person subjects another to sexual contact without their consent, and the lack of consent results from forcible compulsion", the

crime is second degree sexual abuse. *W.Va. Code* 61–8B–7 [1984].

2. When a "person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion", the crime is second degree sexual assault. *W.Va.Code*, 61–8B–4 [1984].

sheet containing numbers admittedly written by Ms. D___, which numbers corresponded to those stipulated to be the West Virginia Lottery numbers for 6 June 1987.

The defense called Ms. D___ to the stand and handed her the sheet containing the handwritten numbers. When asked about them, Ms. D___ responded that she had written the numbers on the page. When asked what the numbers were, she replied, "I was just bored and I started writing things." Record, Vol. 2, p. 145. The defense then asked her, "Does it have a lottery number on it?", to which question the prosecution objected on the grounds that it was a leading question. The court agreed that the question was leading, and sustained the objection.

The defense does not dispute the leading nature of the question, but argues that it had the right to ask leading questions in its direct examination of Ms. D___ because she was an adverse witness. When the defense explicitly asked permission to question Ms. D___ as an adverse witness, the court denied permission, saying:

> "There is no indication of hostility, Mr. Frum. You have called her as your witness. She has been subject to cross-examination. You should not be permitted to utilize leading questions at this stage. Your testimony that these are lottery numbers is totally inappropriate, and you're not under oath to testify here. The Jury is admonished, instructed to disregard."

Record, Vol. 2, p. 146–147. The defense contends that the trial court's ruling on this matter was reversible error. We agree.

■ Rule 611(c), *W.Va.Rules of Evid.* provides, in part, "[w]hen a party calls a hostile witness, an adverse party, a witness identified with an adverse party, or an expert witness, interrogation may be by leading questions." This Rule is substantively identical to Rule 611(c) of the *Fed.Rules of Evid.*, so that materials pertaining to the federal Rule are persuasive authority in construing our own Rule 611(c).

The Report of the House Committee on the Judiciary discusses amendments that Committee made to the Rule 611 submitted to it by the Supreme Court. In the Report, the Committee tells us that it amended Rule 611 so that it would apply equally to civil and criminal cases. The third sentence of Rule 611(c) originally read, "In civil cases, a party is entitled to call an adverse witness or witness identified with him and interrogate by leading questions." The Report tells us:

> The Committee amended this Rule to permit leading questions to be used with respect to any hostile witness, not only an adverse party or person identified with such adverse party. The Committee also substituted the word "When" for the phrase "In civil cases" to reflect the possibility that in criminal cases a defendant may be entitled to call witnesses identified with the government, in which event the Committee believed the defendant should be permitted to inquire with leading questions.

Excerpt from H.R.Rep. No. 650, 93d Cong., 2d Sess., quoted in 1 S. Saltzburg and M. Martin, *Federal Rules of Evidence Manual* 700 (1990).

In *U.S. v. Duncan*, 712 F.Supp. 124 (S.D. Ohio 1988), the court quoted from the same language of the Committee Report, and noted that even before the passage of the amendment, the Sixth Circuit had found in a criminal case, that a government agent's "interests ... could safely be assumed to be adverse to those of the defendant", that a government agent called as a witness by the defense "will not be predisposed to accept suggestions offered by defense counsel's questions", and that, in the absence of a positive showing by the government that the witness is not hostile or biased, "defense counsel should be permitted to lead such a witness." *Id.* at 126, quoting from *United States v. Bryant,* 461 F.2d 912, 917, 919. The *Duncan* court went on to hold:

> This Court concludes that the use of leading questions in direct examination of a law enforcement official by the defense is philosophically supportable based on the reasoning of the Sixth Circuit in *Bryant,* that Fed.R.Evid. 611(c) is

applicable in criminal trials, and that a law enforcement official or other investigating agent (regardless of whether he or she be a local, state or federal officer) may qualify as a witness identified with an adverse party in an action brought by the Government against criminal defendants, absent a positive showing by the Government that the witness is not hostile, biased, or so identified with the adverse party that the presumption of hostility which is the cornerstone of Fed.R. Evid. 611(c) should not be indulged.

*Id.* at 126. If a law enforcement officer is presumed to be hostile to the criminal defendant, will not the alleged victim, as a general rule, be at least equally hostile?

The Fourth Circuit, in *United States v. Hicks*, 748 F.2d 854 (4th Cir.1984), addressed a related situation, holding that the trial court did not abuse its discretion in allowing the government to use two leading questions in its direct examination of the girlfriend of one of the defendants. Concerning the girlfriend, the Court stated, "Clearly she was a person 'identified with an adverse party' so that interrogation by leading questions was permissible." *Id.* at 859.

▇ In the case before us, Ms. D___ fits into at least one of the categories mentioned above. She is adverse to the defendant at least to the same degree that a plaintiff in a civil case, or a law enforcement officer in a criminal case, is adverse to the defendant. Any court that might hold Ms. D___ not to be an adverse party to Mr. Perolis would have to admit that she is, at the very least, a "witness identified with" the State, the party adverse to Mr. Perolis. However, whether she is "adverse" to Mr. Perolis, or "identified with" a party adverse to Mr. Perolis, is of no importance, because Rule 611(c) applies equally to both categories.

## II.

▇ The defense contends also that the trial court erred in excluding the tangible writing containing the lottery numbers, as well as in excluding other evidence concerning the lottery numbers. We agree. Ms.

D___ admitted that she probably copied the numbers from the television, but she could not, or chose not, to tell the court when she had copied the numbers. When the defense moved the admission of the sheet of numbers that Ms. D___ had admitted she wrote, the prosecution objected. Cutting off the prosecution before hearing the grounds for objecting, and allowing the defense no opportunity to state why the exhibit should be admitted, the trial court excluded the exhibit as irrelevant. Record, Vol. 2, p. 148. The implicit reasoning appears to be that because Ms. D___ did not say exactly when she wrote the numbers, the numbers had no probative value.

That Ms. D___ did not provide the date on which she wrote the numbers does not make the exhibit irrelevant. She testified that she had probably taken them from the television. The parties had stipulated to the West Virginia Lottery numbers of 6 June 1987, and the defense planned to show that they were the same as the numbers Ms. D___ had written. Lottery numbers are not reported on television before they are drawn, nor are they shown for very long thereafter. It therefore would be appropriate to infer that, when Ms. D___ copied the numbers from the television, the date was 6 June 1987, or soon thereafter, perhaps 7 June 1987. One could safely guess that she did not take the numbers from the television one month earlier, when she claimed to have stayed in the Perolis house for the last time.

Because the defense was not permitted adequately to examine Ms. D___ about the lottery numbers, and was not allowed to develop further the lottery number evidence by having admitted into evidence as an exhibit the paper on which Ms. D___ had written the numbers, there was no occasion for the jury to learn that the state and defense had stipulated to the official lottery numbers of 6 June 1987, and that they were the same as the numbers Ms. D___ had written. The defense thus was denied the opportunity to impeach Ms. D___'s testimony by means of the lottery evidence. Furthermore, the use of leading questions is a powerful device to cause the witness to

admit to an error in her testimony, or to commit the witness to her previous testimony. If Ms. D⎯ had answered that she had written the numbers on 6 June 1987, the defense would have had an even firmer foundation for the introduction of the writing containing the lottery numbers, and the stipulation concerning the lottery numbers. Had she answered in the negative, and committed herself even more strongly to her prior testimony, the other lottery number evidence would have severely impeached her credibility.

 The trial court has considerable discretion regarding the admission or exclusion of evidence at trial. This Court stated in Syl. Pt. 6 of *State v. Kopa:*

> " 'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion. Syl. pt. 5, *Casto v. Martin*, 159 W.Va. 761, 230 S.E.2d 722 (W.Va.1976) citing Syl. pt. 10, *State v. Huffman*, 141 W.Va. 55, 87 S.E.2d 541 (1955).' Syllabus Point 2, *State v. Rector*, 167 W.Va. 748, 280 S.E.2d 597 (1981)." Syl. pt. 3, *State v. Oldaker*, 172 W.Va. 258, 304 S.E.2d 843 (1983).

173 W.Va. 43, 311 S.E.2d 412 (1983). However, the trial court abused his discretion when he ruled that Ms. D⎯ could not be questioned as an adverse witness. The trial court evidently believed that the operative term of Rule 611(c) is "hostility". It is not. Rule 611(c) does not require that the witness be "hostile". If the witness is adverse to the party, or is identified with an adverse party, then the witness may be examined by leading questions. Furthermore, the trial court compounded his error when he scolded defense counsel in the course of issuing his erroneous ruling.

That the error was prejudicial to the defendant is unquestionable. In this case, the defendant did not claim consent, mistake, or admit to a lesser included offense. Defendant claimed that the acts complained of never occurred, and that Ms. D⎯ fabricated her story. In order to support its claim, the defense attempted to present evidence that Ms. D⎯ was not a credible witness, and attempted to provide possible motives for Ms. D⎯ to have made up the stories. The trial court thwarted these efforts. By preventing the development of the lottery number evidence, the court denied the defense the opportunity to show the jury that Ms. D⎯ had been mistaken or lying about a very important fact.

### III.

 Although not specifically numbered, another error raised by the defense is that the Court wrongly prevented the development of evidence showing that Ms. D⎯ may have been angry with Mr. and Mrs. Perolis because they told her mother that she planned to run away from home. When cross-examining Ms. D⎯, the defense was not allowed to pursue a line of questioning involving Ms. D⎯'s plans to run away. Record, Vol. 1, p. 151. The evidence the defense was attempting to elicit was neither irrelevant, as the State contended, because it would have enlightened the jury as to a possible motive for Ms. D⎯ to fabricate her story. Nor was it impermissibly beyond the scope of the direct examination, as the trial court ruled, because motive for fabrication is something the defense should have been able to bring up on cross-examination.

When the defense examined the defendant's wife on the same matter, the court wrongly sustained a hearsay objection to testimony that the Perolises told Ms. D⎯'s parents of her plan to run away from home. Record, Vol. 2, p. 100. Because the evidence was not offered to prove the truth of the statement itself, it was not hearsay. Rule 801, *W.Va.Rules of Evid.*, defines hearsay:

> "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

The witness informed the jury of an out-of-court statement, however, the statement was not important for its truth, but only for the fact that it was made. Whether Ms. D⎯ planned to run away from home does not matter. The only thing that matters is that the Perolises told Ms. D⎯'s

parents that Ms. D— planned to run away from home. The act of making such a statement to Ms. D—'s parents would give Ms. D— cause to be angry with the Perolises, regardless of the truth of the statement. Because the statement fell outside the threshold definition of hearsay, the State's objection should have been overruled, and the defense should have been able to proceed with the line of inquiry.

■ The errors committed by the trial court manifest an unwillingness, on the part of the trial court, to allow Ms. D—'s credibility to be impeached. Perhaps the trial court was driven by the desire to protect the alleged victim from any embarrassment. However, no witness should be protected from the embarrassment of proper impeachment. The State's case depended largely on Ms. D—'s credibility, so the defense is bound to attempt to impeach her credibility. The trial court must permit the defense to make that attempt, as long as the defense does not engage in otherwise prohibited trial conduct.

This is not a case where the defense sought to impeach the alleged victim's testimony by presenting scandalous material concerning sexual history. Nor did the defense run afoul of Rule 611(a)(3), *W.Va. Rules of Evid.*, which is concerned with protecting "witnesses from harassment or undue embarrassment." The defendant simply wanted to support his claim that the acts complained of by Ms. D— never occurred, and that she fabricated the entire story. By its erroneous rulings, the trial court denied defendant the opportunity to present admissible evidence crucial to his defense.

For the reasons stated above, the judgment of the Circuit Court of Calhoun County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.