# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-1180** (Mingo County 13-F-98)

**James Messer,**
**Defendant Below, Petitioner**

**FILED**

November 20, 2015
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner James Messer, by counsel Karen S. Hatfield, appeals from the October 23, 2014, Sentencing Order entered by the Circuit Court of Mingo County following petitioner's convictions of two counts of burglary, one count of second degree robbery, and one count of conspiracy. The Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Factual Background

In April of 2013, petitioner was indicted for the burglary of the residence of Ronnie Glenn and Leigh Ann Richardson (Count 1); conspiracy with co-defendant, Danny Colegrove, for the burglary of the Richardson residence (Count 2); first degree robbery of William and Vicky Evans (Count 3); burglary of the Evans residence (Count 4); and conspiracy with Colegrove for the burglary of the Evans residence (Count 5). The case proceeded to a jury trial in August of 2014.

The State's theory at trial was that on December 7, 2012, petitioner and Colegrove met and proceeded together to the Richardson residence. Upon arriving there, petitioner and Colegrove broke into the residence through a rear door. The State alleged that the two men stole guns from a gun cabinet and pills from the bottom drawer of the gun cabinet. Colegrove suffered lacerations to his hand as a result of breaking the glass on the gun cabinet and required treatment at a local hospital. On the way to the hospital, the two men stopped at the residence of Colegrove's grandfather and spoke with the grandfather about moving some items from their vehicle into the grandfather's vehicle. Petitioner then moved some guns into the grandfather's vehicle before proceeding to the hospital, which was approximately twenty-five minutes away.

1

Once at the hospital, the two men were questioned by Corporal Edwin Lee Williams of the Mingo County Sheriff's Department, who had already begun investigating the burglary of the Richardson residence. After Colegrove received treatment for his hand, petitioner and Colegrove left the hospital at approximately 11:21 p.m.

The State alleged that at approximately 12:00 p.m. on December 8, 2012, the two men arrived at the Evans residence, which is adjacent to Colegrove's grandfather's residence. The State alleged that petitioner and Colegrove, wearing ski masks, robbed Mr. and Mrs. Evans and Mrs. Evans's mother. Petitioner and Colegrove bound Mrs. Evans' and her mother's hands with tape, forced Mr. Evans to lie on the floor, and forced Mr. Evans, at gunpoint, to reveal the combination to his safe. Mr. Evans later identified the handgun as the same type of gun (a revolver) stolen from the Richardson residence. Additionally, Mr. Evans, having lived next to Colegrove's grandfather, was able to identify Colegrove's voice during the robbery. Mr. Evans could not readily identify petitioner as the other assailant, but indicated that Colegrove referred to him as "J."

Corporal Williams testified that he received a call about a break-in at the Richardson residence on December 7, 2012, at approximately 8:00 p.m. Upon inspecting the residence, he identified that the rear door had been pried open or kicked in; that someone had taken pills and several guns, including two shotguns, a rifle, and a .38-special revolver;[1] and that the glass on the gun cabinet had been broken and there was blood on the carpet below. Corporal Williams notified dispatch and asked that he be advised of anyone reporting to a local hospital with lacerations. Soon thereafter, upon being notified by dispatch, Corporal Williams traveled to Appalachian Regional Hospital and spoke with Colegrove, petitioner, and petitioner's girlfriend. Corporal Williams left the hospital after about fifteen minutes.

Around midnight, Corporal Williams received a call about the incident at the Evans residence, which is located approximately twenty minutes from the hospital.[2] Corporal Williams took statements from Mr. and Mrs. Evans, wherein Mr. Evans indicated that he recognized Colegrove as one of the perpetrators because he was able to recognize Colegrove's voice; that the pair of assailants took approximately $1,500 in cash and assorted jewelry; and that the assailants gained access to the safe by threatening to "blow his head off" if he did not provide the correct combination.

---

[1] Mr. Richardson testified that he had purchased the pistol from petitioner and that petitioner would have known the location of the gun cabinet in the residence.

[2] Petitioner contended during cross-examination of Corporal Williams that Colegrove's medical records proved it was impossible that the pair could travel to the Evans residence in such a short time frame. Petitioner argued that the records indicated that they left the hospital at 11:48 p.m., meaning they could not have committed a robbery twenty minutes away at midnight. However, the State countered that the records actually indicated that the trio left the hospital at 11:21 p.m., and that the 11:48 p.m. time was purely a dispositional status time to complete the report.

2

Corporal Williams testified that, upon contacting Colegrove's grandfather, he learned that Colegrove and petitioner had placed guns in the back of the grandfather's vehicle. Soon thereafter, Corporal Williams received a call from Colegrove, who asked if he could "work out a deal." Corporal Williams then met Colegrove, who gave a statement identifying himself and petitioner as the perpetrators of the Richardson burglary.

The State called Colegrove to testify as a hostile witness. Colegrove's trial testimony differed from his statement to Corporal Williams. Colegrove testified that he and petitioner were good friends; that he and petitioner went to the Richardson residence to buy drugs; that he let himself in after realizing no one was home; and that petitioner remained in the vehicle. Over petitioner's objection, the circuit court permitted the State to play the video of Colegrove's statement to Corporal Williams for the jury. Despite the inconsistencies between his statement and his trial testimony, Colegrove continued to refuse to implicate petitioner in any of the crimes charged, stating that he falsely implicated petitioner in his statement due to a "falling out" or "altercation" the two had had involving a woman.

After hearing testimony from Mr. and Mrs. Richardson regarding the items stolen from their residence and their estimated values, the State called Mr. Evans to testify. Mr. Evans testified that he knew Colegrove and could identify his voice during the robbery, despite the fact that both assailants were wearing ski masks, gloves, and jackets. Mr. Evans testified that Colegrove referred to the other assailant as "J." He identified the pistol used in the crime as resembling a .38 revolver. He added that the assailants duct-taped his hands along with his wife's and mother-in-law's hands before leaving the residence. Mrs. Evans testified consistent with her husband and identified "J" as being slightly taller than five feet five inches with dark eyes.

The State rested its case, and petitioner moved for a judgment of acquittal on the basis of insufficient evidence, which the circuit court denied. Petitioner then rested his case and renewed his motion for judgment of acquittal, which the court denied. The jury deliberated for approximately an hour before finding petitioner guilty on Counts 1, 3, 4, and 5. As to the robbery, the jury found petitioner guilty of second degree robbery, rather than first degree robbery as charged in the indictment. Finally, the jury acquitted petitioner on Count 2, conspiracy for the burglary of the Richardson residence.

By order entered on October 23, 2014, the circuit court sentenced petitioner to one to fifteen years in prison for each count of burglary and five to eighteen years in prison for second degree robbery, with all three counts to run consecutively. The court sentenced petitioner to one to five years in prison for conspiracy, to run concurrently with the first burglary count. Petitioner now appeals to this Court.

**Discussion**

Petitioner raises twenty-two assignments of error on appeal. First, he contends that the circuit court violated his constitutional right to a speedy trial by continuing his trial without just cause. Petitioner states that he remained incarcerated from his arrest on December 20, 2012, to his trial in August of 2014, and that neither the State nor he requested a continuance. Petitioner contends that, because of the delay, the transcript of the Evans's 911 call became unavailable and

3

it would have established a clear timeline that showed that it was impossible for petitioner to have committed the robbery.

Article III, Section 14 of the West Virginia Constitution requires that an accused have a trial "without unreasonable delay." In syllabus point six of *State v. Elswick,* 225 W.Va. 285, 693 S.E.2d 38 (2010), this Court held as follows:

> "A determination of whether a defendant has been denied a trial without unreasonable delay requires consideration of four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his rights; and (4) prejudice to the defendant. The balancing of the conduct of the defendant against the conduct of the State should be made on a case-by-case basis and no one factor is either necessary or sufficient to support a finding that the defendant has been denied a speedy trial." Syl. Pt. 2, *State v. Foddrell*, 171 W.Va. 54, 297 S.E.2d 829 (1982).

In the present case, petitioner was indicted on April 24, 2013, and the matter proceeded to a jury trial on August 5 and 6, 2014. He was appointed counsel three times. Attorney Jerry Lyall was originally appointed the day following petitioner's indictment, and filed a motion to withdraw on October 25, 2013, which was granted. It appears that Attorney Lyall and petitioner had a disagreement regarding the presentation of a plea offer, which petitioner characterized as Attorney Lyall trying to "set him up." The circuit court then appointed Attorney Diana Carter-Weidel on November 7, 2013, who later identified a conflict and was permitted to withdraw on January 24, 2014. Petitioner's current counsel, Attorney Karen S. Hatfield, was then appointed and took the case to trial.

Accordingly, any delay in the case was due to the withdrawal of petitioner's first two attorneys, not to any failures by the State or the court. As for the alleged prejudice, petitioner fails to demonstrate how the transcripts of the 911 tapes would support his position that he could not have committed the robbery at the Evans residence. Therefore, we see no violation of petitioner's right to a speedy trial.

In his second assignment of error, petitioner argues that there was a conflict of interest because Attorney Diana Carter-Weidel, who had been appointed to represent him for a short period, also represented Colegrove. Petitioner states that his and Colegrove's interests were adverse given Colegrove's statement to the police implicating petitioner in the crimes, and, thus, petitioner received ineffective assistance of counsel from Attorney Carter-Weidel.

We have held that "[t]he joint representation by counsel of two or more accused, jointly indicted and tried is not improper *per se*; and, one who claims ineffective assistance of counsel by reason of conflict of interest in the joint representation must demonstrate that the conflict is actual and not merely theoretical or speculative." Syl. Pt. 3, *State ex rel. Postelwaite v. Bechtold*, 158 W.Va. 479, 212 S.E.2d 69 (1975). "In a case of joint representation, once an actual conflict is found which affects the adequacy of representation, ineffective assistance of counsel is deemed to occur and the defendant need not demonstrate prejudice." Syl. Pt. 4, *Cole v. White*, 180 W.Va. 393, 376 S.E.2d 599 (1988).

In this case, Attorney Carter-Weidel was petitioner's appointed counsel for only about a month before the potential conflict was discovered and petitioner was informed that she could not represent him. Petitioner fails to allege that Attorney Carter-Weidel actually communicated with him, worked on his case, or appeared on his behalf during this short period. Therefore, petitioner cannot demonstrate that a conflict of interest that "affect[ed] the adequacy of representation" as required by *Cole* to show ineffective assistance of counsel. We, accordingly, reject petitioner's second assignment of error.

Third, petitioner argues that the circuit court refused to remove an allegedly biased juror for cause as he requested, but dismissed two jurors that the State wanted dismissed. We have articulated the standard of review of this issue as follows:

> In reviewing the qualifications of a jury to serve in a criminal case, we follow a three-step process. Our review is plenary as to legal questions such as the statutory qualifications for jurors; clearly erroneous as to whether the facts support the grounds relied upon for disqualification; and an abuse of discretion as to the reasonableness of the procedure employed and the ruling on disqualification by the trial court.

*State v. Miller,* 197 W.Va. 588, 600-01, 476 S.E.2d 535, 547-48 (1996). In syllabus point four of *Miller,* we further held:

> The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant. Even though a juror swears that he or she could set aside any opinion he or she might hold and decide the case on the evidence, a juror's protestation of impartiality should not be credited if the other facts in the record indicate to the contrary.

Additionally,

> "[w]hen a prospective juror makes a clear statement of bias during voir dire, the prospective juror is automatically disqualified and must be removed from the jury panel for cause. However, when a juror makes an inconclusive or vague statement that only indicates the possibility of bias or prejudice, the prospective juror must be questioned further by the trial court and/or counsel to determine if actual bias or prejudice exists. Likewise, an initial response by a prospective juror to a broad or general question during voir dire will not, in and of itself, be sufficient to determine whether a bias or prejudice exists. In such a situation, further inquiry by the trial court is required. Nonetheless, the trial court should exercise caution that such further voir dire questions to a prospective juror should be couched in neutral language intended to elicit the prospective juror's true feelings, beliefs, and thoughts—and not in language that suggests a specific response, or otherwise seeks to rehabilitate the juror. Thereafter, the totality of the circumstances must be considered, and where there is a probability of bias the

5

prospective juror must be removed from the panel by the trial court for cause." Syllabus point 8, *State v. Newcomb,* 223 W.Va. 843, 679 S.E.2d 675 (2009).

Syl. Pt. 2, *State v. Sutherland*, 231 W.Va. 410, 745 S.E.2d 448 (2013).

The record reveals that the circuit court struck two jurors for cause because of their close relationship with petitioner's trial counsel. As a result of this relationship, these two jurors stated that they would be uncomfortable rendering a verdict for the State. Petitioner sought to remove a juror who stated that he had a working relationship with the prosecutor fifteen years before the trial but who had not kept in contact with him since then. Contrary to the two jurors removed by the court, this juror expressed no concern over his ability to render a fair verdict, and the circuit court refused to strike him for cause. Based upon our review of the record, we see no error by the circuit court in it rulings on the parties' respective motions to strike certain jurors.

Petitioner's fourth and twelfth assignments of error similarly contend that the jury's verdict was contrary to the manifest weight of the evidence because the only evidence implicating petitioner was Colegrove's "false" statement. He argues that none of the alleged victims could implicate him in the crimes charged. This Court has long held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Additionally, we have held that

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. Pt. 3, *id*.

In this case, the jury was free to place more weight on Colegrove's pretrial statement to the police clearly implicating petitioner than his completely inconsistent trial testimony that

attempted to exonerate him. However, even excluding Colegrove's pretrial statement, the trial evidence suggested that petitioner was with Colegrove on the night of the crimes; that only petitioner knew the location of the gun cabinet in the Richardson residence; and that petitioner assisted in moving the guns into his grandfather's vehicle. As for the robbery, Mrs. Evans testified that Colegrove referred to his accomplice as "J" and her description of the accomplice's height and build matched that of petitioner. Additionally, the evidence suggested that the revolver used in the robbery was the same one stolen from the Richardson residence. Upon our review of the record and being mindful of the deference afforded to all inferences and credibility assessments made by the jury, we find that the evidence, albeit circumstantial, was sufficient to sustain petitioner's convictions.

In his fifth and twentieth assignments of error, petitioner contends that the circuit court failed to suppress State's evidence that was not timely disclosed. Petitioner states that he was provided the State's witness list only five calendar days before the trial; that the State never disclosed an exhibit list until the start of trial, but was allowed to introduce its exhibits anyway; and that the State did not timely disclose Colegrove's Crime Information Bureau ("CIB") report, his plea deal, or his prior statements to police. Petitioner argues that these late disclosures hindered his ability to adequately prepare his defense.

"The traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syl. Pt. 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994). In the present case, the State admittedly had difficulty providing its witness list and witness CIB reports to petitioner in advance of trial. However, our review reveals that petitioner was provided the information at trial, and despite his assertions, was able to extensively use the documents in his defense. Specifically, petitioner exhaustively attacked Corporal William's investigation, identifying information relating to petitioner, and Colegrove's credibility and reasoning for initially implicating petitioner. Accordingly, we cannot find that petitioner's defense was hampered such as to warrant a new trial.

Sixth, petitioner argues that the valuation evidence of the stolen items lacked any basis and should have been excluded. Essentially, petitioner claims that the circuit court allowed the victims to testify to the value of the items stolen from their residences without requiring the State to first prove that the victims owned said items. Petitioner's argument defies common sense. The victims testified to owning or possessing the items that were stolen and the costs they paid to purchase those items. Upon our review, we find that the victims' testimony that they owned the stolen items was a sufficient basis for the circuit court to permit evidence of the value of the items.

7

In his seventh assignment of error, petitioner argues that the circuit court committed plain error[3] when it permitted a tainted and suggestive identification of petitioner to be presented to the jury. The testimony about which petitioner complains came from Mrs. Evans, who testified that one of the robbers referred to his accomplice as "J," and that "J" was a little taller than five foot five inches tall, with really dark brown eyes, and a "a little voice you won't forget." Petitioner contends that this testimony was unfairly prejudicial because Mrs. Evans never included such a description in her statement to the police at the time of the incident, but rather, mentioned it for the first time at trial. However, as respondent correctly states, Mrs. Evens never identified petitioner at trial; she testified to the facts of the robbery and to the characteristics of the accomplice as she perceived him. She never pointed to petitioner and testified that he was the one with Colegrove during the robbery. As such, we must reject petitioner's argument.

Petitioner's eighth assignment of error is that the jury should not have been permitted to view the video of Colegrove's statement to the police. Petitioner argues that the video was overly prejudicial and not warranted because Colegrove admitted on the stand that his testimony differed from his previous statement. Additionally, petitioner argues that the statement was made in a coercive atmosphere, as Colegrove was in a vehicle with two police officers who were asking him leading questions.

"A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998). In syllabus point seven of *Rodoussakis,* we further held that

> [a] videotaped interview containing a prior inconsistent statement of a witness who claims to have been under duress when making such statement or coerced into making such statement is admissible into evidence if: (1) the contents thereon will assist the jury in deciding the witness' credibility with respect to whether the witness was under duress when making such statement or coerced into making such statement; (2) the trial court instructs the jury that the videotaped interview is to be considered only for purposes of deciding the witness' credibility on the issue of duress or coercion and not as substantive evidence; and (3) the probative value of the videotaped interview is not outweighed by the danger of unfair prejudice.

(Citation omitted). In the present case, we must first note that petitioner did not object to the substance of Colegrove's statement being submitted to the jury; rather, his objection targeted the statement being submitted to the jury in the form of a video. Respondent states that Colegrove pled guilty to crimes associated with the Richardson burglary and the Evans robbery in exchange for his testimony in petitioner's trial. However, once on the stand, Colegrove chose to remove

---

[3] "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

petitioner from every aspect of the crimes. The State then used Colegrove's prior statement to impeach his trial testimony in order to attack his credibility, and at the conclusion of the evidence, the circuit court gave a general instruction regarding impeachment of witnesses. Accordingly, the circuit court did not abuse its discretion in allowing the video of Colegrove's statement to be submitted to the jury.

Ninth, petitioner argues that the State committed prosecutorial misconduct by withholding exculpatory evidence in the form of Colegrove's medical records showing the exact time that Colegrove and petitioner left the hospital and the transcript of the 911 operator's call to Corporal Williams informing him of the Evans burglary and robbery. Petitioner contends that these items would have demonstrated that it was impossible for the two men to have traveled from the hospital to the Evans' residence in time to have committed the crimes there. Petitioner states that he did not receive Colegrove's medical records until the day prior to the start of trial, and never received the transcript of the 911 call because Mingo County 911 destroys all transcripts after one year.

The following three critical components must be considered when determining whether the State has withheld exculpatory evidence such as to violate an accused's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982):

> (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, in part, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).

We find that petitioner's argument fails under the first *Brady* component; that is, the evidence is not exculpatory or impeachment evidence. According to the hospital records, Colegrove's treating physician noted Colegrove and petitioner left the hospital at 11:21 p.m. on the night of the crimes. In contrast, the final disposition of the report states that Colegrove was discharged and the report finalized at 11:48 p.m. The hospital records were provided to petitioner and introduced at trial, and he was able to use the records to build his argument for an alternate timeline in which he and Colegrove did not leave until the later time, making it nearly impossible for the two to have committed the crimes. However, petitioner's argument fails to acknowledge that the records created an issue of fact for the jury to decide, i.e., whether the two left at 11:21 p.m. or 11:48 p.m., and the jury did not accept petitioner's theory of the later time. Therefore, the records did not exculpate petitioner.

As for the transcript of the 911 call, we likewise find that the evidence fails under the *Brady* test above because it is speculative as to whether it was exculpatory; it was not suppressed by the State; and there is no indication that the evidence would have been material at trial. Petitioner's quarrels with his initially-appointed counsel resulted in a large amount of time between the indictment and the appointment of his eventual trial counsel. During this time, there is no indication that the 911 transcript was requested by petitioner or was relevant to the State's

9

investigation such that the State would preserve it. Petitioner relies on mere speculation that the transcript would serve to prove his theory that he could not have committed the crimes at the Evans residence. Therefore, we find no violation of *Brady* and reject petitioner's ninth assignment of error.

In his tenth assignment of error, petitioner contends that Corporal Williams should not have been permitted to testify because he had no connection to the chain of evidence, was biased against petitioner, and conducted an incomplete investigation. "The question of the competency of a witness to testify is left largely to the discretion of the trial court and its judgment will not be disturbed unless shown to have been plainly abused resulting in manifest error." Syl. Pt. 8, *State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974). Even though Corporal Williams was not the officer who presented the case to the grand jury, contrary to petitioner's assertions, he was intimately involved in the investigation of the crimes at issue. Additionally, petitioner cross-examined Corporal Williams based on petitioner's perceived deficiencies in his police report. Accordingly, we find that the circuit court did not abuse its discretion in permitting Corporal Williams to testify.

Petitioner's eleventh assignment of error is that the circuit court committed plain error by allowing William and Vicky Evans to provide confusing and highly prejudicial testimony. Specifically, petitioner takes issue with the fact that neither Mr. nor Mrs. Evans could positively identify petitioner as one of the perpetrators, but rather, they believed petitioner was involved in the crimes solely because of their faith in the investigation by the police.

Respondent counters that petitioner's argument is "alarmingly without merit." We agree. "Rules 402 and 403 of the *West Virginia Rules of Evidence* [1985] direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant." Syl. Pt. 4, *Gable v. Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991). In the present, case both Mr. and Mrs. Williams testified to the details of a traumatic robbery, during which they were bound with tape and robbed at gunpoint. In addition to identifying the items stolen, they identified Colegrove as one of the perpetrators based upon their familiarity with his voice, and added that he referred to his accomplice as "J," whose height and build matched that of petitioner. No doubt, their testimony was unfavorable to petitioner. However, upon our review, we cannot conclude that the probative value of Mr. and Mrs. Evans's testimony was outweighed by its prejudice.

Petitioner's next argues that the circuit court erred by (1) allowing leading questions during the State's direct examinations of its witnesses and (2) allowing inadmissible hearsay to be admitted into evidence. "The allowance of leading questions rests largely in the discretion of the trial court, and absent an abuse of such discretion, the trial court's ruling will not be disturbed." Syl. Pt. 6, *State v. Fairchild*, 171 W.Va. 137, 298 S.E.2d 110 (1982). Our review of the record reveals the circuit court sustained many of petitioner's objections to the State using leading questions. However, the court allowed leading questions during the State's examination of Colegrove and his grandfather. Importantly for our analysis, the State called Colegrove as an adverse witness, in which leading questions are permitted. *See* Syl. Pt. 1, *State v. Perolis*, 183 W.Va. 686, 398 S.E.2d 512 (1990) ("When a party calls a hostile witness, an adverse witness, or a witness identified with an adverse party, interrogation may be by leading questions."). As for

the examination of Colegrove's grandfather, the record reveals that, at times, he was non-responsive during the State's questioning. Therefore, the State was required to reformulate, restructure, and, sometimes lead, the witness in order to elicit his testimony. As the State argues in its brief, the record suggests that this witness's difficulty could have been age-related. Regardless, petitioner fails to convince us that these leading questions resulted in an abuse of discretion by the circuit court.

As for the admission of improper hearsay evidence, petitioner argues that the victims were permitted to testify that their belief that petitioner was involved in the crimes was based on what they had been told by police, and that petitioner was convicted based on pure hearsay. We disagree. We have held that

> [g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). Upon our review, we cannot conclude that the court erred by allowing this testimony. For one, this testimony was elicited by petitioner in cross-examination to attack the basis for the victim's belief that petitioner was involved in the crimes. He attempted to benefit from its admission and now attempts to paint such admission as reversible error. Therefore, we reject petitioner's argument that he was prejudiced by the admission of hearsay evidence.

Petitioner's fourteenth assignment of error is that the circuit court allowed the State to introduce a photograph of a gun cabinet, the video of Colegrove's statement, and an audio recording of another telephone statement made by Colegrove to the police, all without a proper foundation. We reject petitioner's argument and find no error. With respect to the photo of the gun cabinet, both Colegrove and Mr. Richardson corroborated that the photo was a truthful representation of the cabinet which was the subject of the theft. With respect to the recorded statements of Colegrove, petitioner fails to articulate how the recordings were not properly authenticated and identified prior to their use by the State; rather, he reiterates his previous argument that the recordings were improperly used to impeach Colegrove.

As his fifteenth assignment of error, petitioner argues that it was plain error to allow Colegrove to testify in orange prison attire. We have held that "[a] criminal defendant has no constitutional right to have his witnesses appear at trial without physical restraints or in civilian attire." Syl. Pt. 3, *State ex rel. McMannis v. Mohn*, 163 W.Va. 129, 254 S.E.2d 805 (1979), In syllabus point four of *State v. Allah Jamaal W.,* 209 W.Va. 1, 543 S.E.2d 282 (2000), we further held that

> [t]he trial judge should not permit an incarcerated defense witness to appear at trial in the distinctive attire of a prisoner. However, the burden is upon the defendant to timely move that an incarcerated witness be permitted to testify

11

at trial in civilian clothes. If the trial judge denies the motion, the judge must set forth on the record the reasons for denying said motion.

In the present case, there is no indication that petitioner moved for Colegrove to testify in civilian clothing, or that he objected to Colegrove's prison attire at trial. Additionally, at trial, petitioner attacked Colegrove's credibility, his motives for allegedly lying about petitioner, his prior criminal actions, and his plea deal with the State, thereby making his status as a convicted criminal known to the jury, independent of his prison garb. Therefore, we find that Colegrove's appearance in prison attire did not "seriously affect[] the fairness, integrity, or public reputation of the judicial proceedings." *See* Syl. Pt. 7, in part, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) (setting forth the elements required for a defendant to invoke the plain error doctrine).

Petitioner's sixteenth assignment of error is that the circuit court committed plain error by ending the first day of trial early because the State failed to ensure that Colegrove was available to testify that day. Petitioner states that the State's conduct forced the second day of trial, which included jury deliberations, to last into the late evening hours. Respondent explains that Colegrove refused to testify at petitioner's trial unless his counsel was present, and his counsel was not available on the first day of trial. So, Colegrove was called to testify on the second day and final day of trial. Upon our review, we cannot agree with petitioner's unsupported speculation that the delay was a tactic by the State to ensure that, after such a long day, the jury would be anxious to reach a quick verdict. We acknowledge that the circuit court reprimanded the State for not ensuring Colegrove's availability as planned, but we see no prejudice or error warranting relief for petitioner. *See Miller*, *supra*.

Next, petitioner contends that the State committed prosecutorial misconduct by failing to disclose its inducements to Colegrove in exchange for his testimony against petitioner. Petitioner contends that Colegrove was charged with driving on a revoked license in the weeks prior to the December 2012, crimes at issue in this case, and the State dismissed those charges in January 2013, as evidenced by Colegrove's CIB report.

"The prosecution must disclose any and all inducements given to its witnesses in exchange for their testimony at the defendant's trial." Syl. Pt. 2, *State v. James*, 186 W.Va. 173, 411 S.E.2d 692 (1991). In the present case, the reason for and nature of the dismissal of Colegrove's traffic charges is unclear. Petitioner contends that the timing suggests that the charges were dismissed in exchange for Colegrove's testimony. Respondent contends that it's more likely that the charges were procedurally dismissed upon their joinder with Colegrove's felony proceedings for the burglary and robbery charges, and that petitioner is mischaracterizing the dismissal as an inducement. However, what is clear, and what is most important, is that Colegrove affirmatively testified that he was made no promises related to the traffic charges in exchange for his testimony in petitioner's trial. Therefore, we do not find that the State failed to disclose its inducements to Colegrove with respect to his traffic charges, as required by *James,* as it is not clear that there were any inducements made relating to those charges.

In his eighteenth assignment of error, petitioner asserts that the circuit court erred in denying his motions for judgment of acquittal because there was a lack of evidence to support his convictions. We disagree. We have long held that

[u]pon motion to direct a verdict for the defendant, the evidence is to be viewed in light most favorable to prosecution. It is not necessary in appraising its sufficiency that the trial court or reviewing court be convinced beyond a reasonable doubt of the guilt of the defendant; the question is whether there is substantial evidence upon which a jury might justifiably find the defendant guilty beyond a reasonable doubt.

Syl. Pt. 1, *State v. Fischer*, 158 W.Va. 72, 211 S.E.2d 666 (1974) (citation omitted). For the same reasons we rejected petitioner's fourth assignment of error, above, we reject his claim that he was entitled to a judgment of acquittal. Colegrove implicated petitioner as his accomplice. The jury heard him recant that statement, but chose, as was its right, to disregard his testimony exonerating petitioner. However, even disregarding Colegrove's statement, there was substantial evidence presented by the State upon which the jury could find petitioner guilty. Therefore, we find no error in the denial of petitioner's motions for judgment of acquittal.

Petitioner's nineteenth assignment of error is that the circuit court erred in denying his motion for a new trial. "Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence." Syl. Pt. 1, *State v. White*, 228 W.Va. 530, 722 S.E.2d 566 (2011) (citations omitted). In *White,* we further held that "[w]e review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review." Syl. Pt. 2, in part (citations omitted).

In the present case, petitioner failed to state in his brief how the denial of his motion was an abuse of discretion, or how the circuit court's findings were clearly erroneous. In fact, his argument in support of this assignment of error fails to contain any analysis. Accordingly, we reject petitioner's argument. *See*, in part, W.Va.R.App.P. 10(c)(7) ("The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.").

In his next assignment of error, petitioner argues that it was plain error for the State to "force" Mr. and Mrs. Richardson to testify against petitioner, despite their requests to have the charges against him dismissed and their admission that they could not identify him as a perpetrator. The victims in the present case all testified to the crimes committed against them, including Mr. and Mrs. Richardson. At trial, according to petitioner, they opined that there was no evidence that petitioner broke into their home, aside from what the police had told them. As respondent correctly points out, petitioner's argument has no basis in the law, and, therefore, we reject it.

Petitioner's final assignment of error is that he was denied a fair trial as a result of cumulative effect of the circuit court's numerous errors. We have held that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial

prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972). Respondent counters that petitioner's appeal appears to be "an amalgamation of every objection made during [p]etitioner's trial and several additional errors not properly raised during trial." Our review of this matter reveals no error by the circuit court, let alone numerous errors, the cumulative effect of which denied petitioner a fair trial.

For the foregoing reasons, we affirm the Circuit Court of Mingo County's "Sentencing Order," entered on October 23, 2014.

Affirmed.

**ISSUED:** November 20, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

14